Hillsborough, ⎱
Nov. 4, 1908. ⎰

BANK COMMISSIONERS *v.* SECURITY TRUST CO.

Depositors in the savings department of an insolvent trust company and holders of its secured debentures are entitled to share with unsecured creditors in the distribution of unpledged assets, as to so much of their claims as are not satisfied by the application of the special funds created for their benefit.

In the event of insolvency, each separate fund created by a banking institution for the benefit of a particular class of creditors is chargeable with the expense of its own administration.

PETITION, for instructions as to the distribution of the assets of the Security Trust Company.  At the January term, 1908, of the superior court, *Stone*, J., found the facts and transferred the following questions: (1) How shall the funds be distributed?   (2) How shall the expenses of administration be apportioned?

The Security Trust Company was incorporated in 1889 (Laws 1889, *c.* 175) and was authorized, among other things, to do a general banking and a savings bank business.  At the time of its failure in 1896, its assets consisted of (1) securities held under the provisions of section 18, chapter 165, Public Statutes, (2) securities deposited with trustees to secure the payment of several issues of debenture bonds, and (3) unpledged assets.  There are three general classes of creditors: (1) depositors in the savings

department, (2) holders of debenture bonds, and (3) unsecured creditors. The amount realized from the assets of the savings department is insufficient to satisfy the claims of the depositors; the amount realized from the securities deposited with trustees is insufficient to satisfy the claims of bondholders; and the amount realized from unpledged assets is insufficient to satisfy the claims of unsecured creditors.

*Edwin G. Eastman,* attorney-general, for the petitioners.

*George B. French,* for the trustees for holders of debenture bonds, and others.

*Taggart, Tuttle, Burroughs & Wyman,* for Walter M. Parker and others.

YOUNG, J. 1. The relation between the different classes of claimants of the funds in the hands of the assignee and the trust company is that of debtor and creditor. *Bank Commissioners* v. *Banking Co.,* 74 N. H. 292. Therefore the depositors in the company's savings department, as well as the holders of debenture bonds, are entitled to share with the unsecured creditors in the distribution of the unpledged assets, as to so much of their claims as are not satisfied by the application of the special funds created for their benefit. *Bank Commissioners* v. *Trust Co.,* 70 N. H. 536, 539.

The defendants, however, contend that the rule which permits secured creditors whose security is insufficient to pay their claims in full to share with the general creditors as to the balance of their claims, has no application in this case in so far as these depositors are concerned, because, as they say, when the legislature enacted section 18, chapter 165, Public Statutes, it made two distinct institutions of every trust company engaged in the savings bank business,—a savings bank and a trust company,—and the rights of the creditors of one of these institutions to share in the assets of the other is similar to the right of preferred shareholders to participate in the distribution of the corporate assets. If this was the legislative purpose, it follows that when a trust company sets apart securities having an estimated value about equal to the amount due the depositors in the savings department, all the rest of the company's assets, including not only the capital stock and the profits from the general banking business, but also the profits from the savings department, constitute a fund for the special benefit of the general creditors. It is clear that this is so; for under such a construction of the section the depositors in the sav-

ings department of such an institution are not permitted to share in the distribution of the general assets until after the claims of general creditors are satisfied. In other words, if the contention is sound the section was enacted for the special benefit of general creditors of such institutions.

The major premise upon which the defendants rest their contention that such is the proper construction of the section above cited is the proposition that the depositors in the savings department of such an institution do not contribute anything toward the general assets, and that "natural justice" requires that those who do not contribute to a fund should not share in its distribution until after the claims of those who helped to create it have been satisfied. The minor premise is that there is a presumption the legislature intends to do what "natural justice" requires should be done. Hence they say, that since these depositors did not help create the general assets there is a presumption the legislature did not intend they should share in their distribution; for to permit them to do so would not be in accordance with the dictates of "natural justice."

There are several answers to this contention. One is this: The minor premise overlooks the fact that "natural justice" requires that not only those who help create a fund, but also those for whose benefit it is created, should share in its distribution. All corporations which engage in the banking business have a paid-up capital. One purpose of this capital is to create a fund available to pay the claims of all those who have dealings with such companies. In other words, one purpose of the paid-up capital of such an institution is to create a fund in the nature of collateral security, and this fund is for the benefit of all the creditors of such an institution—not for the benefit of a particular class. According to the view of the general creditors, however, their claims must be paid in full out of this fund before any of it is available to pay the claims of depositors in the savings department of such an institution. Another fatal objection to this contention is that the proposition on which it rests is not in accordance with the fact. The profits of the savings department of such an institution go into and become a part of the general assets, just as much as the profits of the general banking business. Consequently, since "natural justice" requires that those who help create a fund and those for whose benefit it is created should share in its distribution, the legislature must have intended that the depositors in the savings department of a trust company should share in the distribution of the general assets, in the same way and to the same extent as the company's other creditors.

Although in this case, as in the case of all other insolvent con-

cerns, the losses more than equal the capital paid in by the shareholders, it is not fair to any particular class of creditors to say that as to that class it is the capital stock which is lost, however it may be as between the creditors and the shareholders. *Bank Commissioners* v. *Banking Co.*, 74 N. H. 292. As has been seen, the capital stock is in the nature of collateral security, and is for the benefit of all the creditors of the company. Consequently, when it comes to the distribution of the assets of such a corporation among its creditors, the capital stock is treated as an existing fund, in so far as the unpledged assets are sufficient for that purpose.

When the legislature enacted section 18, chapter 165, Public Statutes, it did not intend to make two separate institutions of such trust companies as were engaged in the savings bank business, but did intend to create funds for the special benefit of the depositors in their savings departments. That this is so seems perfectly clear from an examination of the legislation in respect to savings banks. P. S., *c.* 165; Laws 1893, *c.* 52; Laws 1895, *cc.* 92, 105, 114; Laws 1899, *cc.* 72, 74; Laws 1901, *c.* 114; Laws 1905, *c.* 32. Such an examination discloses a legislative purpose to protect such depositors, even at the expense of the general creditors of such institutions. Since this is so, there is a presumption that section 18, chapter 165, Public Statutes, was enacted to protect them; and as there is nothing to rebut the presumption, it must be held that that was the purpose for which it was enacted. Consequently, the securities set apart under the provisions of the section should be treated just as they would be if the company had deposited them with a trustee to secure the payment of the claims of these depositors.

2. It is the general rule that the expense incident to administering a special fund is a charge upon it. There is nothing to show that the legislature intended a different rule should apply in the case of funds created by banks for the special benefit of a class of their creditors. Since this is so, the securities set apart for the benefit of the depositors in the savings department of the trust company must bear the expense incident to administering them, and the same is true of those deposited with the trustees for the benefit of the holders of debenture bonds.

*Case discharged.*

BINGHAM, J., did not sit: the others concurred.