UNITED STATES OF AMERICA *vs*. COMMISSIONER OF BANKS
& another.

Suffolk. October 20, 21, 1925. — December 15, 1925.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & SANDERSON, JJ.

*Trust Company*, In liquidation: rights of United States as creditor, limitation of claims. *Limitation of Suit*, By decree.

In proceedings in the Supreme Judicial Court relating to the liquidation of the affairs of a trust company whose property and business were in the possession of the commissioner of banks under St. 1910, c. 399, § 2, a decree limiting the time within which claims against the assets of the trust company might be filed was not effectual to bar a claim by the United States upon a check received by it in its governmental capacity and certified by the trust company before the commissioner of banks took possession.

None of the acts referred to in U. S. Rev. Sts. 3466, accompanied and gave character to the inability of a trust company to pay its debts previous to the taking possession of its property and business by the commissioner of banks under St. 1910, c. 399, § 2; and the United States was not entitled to priority in the payment of a claim against assets of the trust company proved in such proceedings.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on March 3, 1925, and afterwards amended, seeking proof of a claim against the assets of the Cosmopolitan Trust Company in the possession of the respondent commissioner of banks, and the establishment of priority rights with regard thereto.

The suit was reserved by *Wait*, J., upon the bill as amended and answer for determination by the full court.

*G. R. Farnum*, Assistant United States Attorney, (*E. R. McCormick*, Assistant United States Attorney, with him,) for the plaintiff.

*H. O. Cushman*, for the defendants.

PIERCE, J. This is a suit in equity to establish a claim in favor of the United States against the property of the Cosmopolitan Trust Company, in possession of the commissioner of banks for liquidation under the provisions of St. 1910, c. 399, as amended, now G. L. c. 167, and, when allowed, to be

decreed to stand as a priority claim under § 3466 of U. S. Rev. Sts. The case was heard upon the bill and answer, and was reserved by a single justice of this court for determination by the full court.

The relevant facts deducible from the pleadings are as follows: March 9, 1920, the Hub Rain Coat Company drew a check upon the Cosmopolitan Trust Company, payable to the order of the Treasurer of the United States. This check on March 11, 1920, was duly certified by the trust company "Good for $2357.76 When properly Endorsed." The check was indorsed by the Treasurer of the United States, "This check is in payment of an obligation to the United States and must be paid at par. Frank White, Treasurer."

The commissioner of banks took possession of the property and business of the Cosmopolitan Trust Company on September 25, 1920, and the defendant Cushman was appointed liquidating agent on October 18, 1920. The commissioner filed a petition in the Supreme Judicial Court on August 3, 1922, seeking an order to limit the time for the presentation of claims. An order of notice to show cause why the petition should not be granted was duly published in three newspapers in the city of Boston. On the return day of the notice, August 15, 1922, no one appearing in opposition, a decree was entered barring proof of claims and institution of suits thereon beyond October 16, 1922. Notice of the last named decree was duly published in public newspapers on September 11 and 18, and October 2, 1922.

On September 25, 1920, and at all times since, the United States was the holder and owner of the check above described. The United States was never notified of the decretal limitation upon the time for the prosecution and litigation of claims against the trust company, otherwise than by the newspaper publications. Prior to October 16, 1922, no claim was filed by the plaintiff against the assets of the trust company in the possession of the commissioner of banks. The commissioner of banks was notified by letter dated August 29, 1923, of the claim of the United States, and on September 7, 1923, acknowledged receipt of the letter with

an enclosed blank proof of claim. September 14, 1923, the plaintiff sent a proof of claim to the commissioner with an accompanying letter. October 1, 1923, the liquidating agent, Cushman, returned the check and refused to allow the claim on the ground that the time for presentation of claims had expired.

The bill in substance charges, and the answer admits, that dividends in the aggregate amount of twenty-six per cent have been paid creditors in the general or commercial departments, whose claims were duly proved and allowed prior to October 16, 1922; and that the commissioner and liquidating agent have refused to allow the claim of the plaintiff or to pay dividends thereon unless by order of the court; that the assets of the trust company in the hands of the commissioner of banks are insufficient to pay the creditors of either the savings or the commercial department of the said trust company whose claims have been duly proved, allowed and filed; and the answer also admits as charged in substance in the bill that "the assets in the hands of the . . . commissioner of banks, the property of said Trust Company, have at all times since October 16, 1922, been sufficient to pay the petitioner the amount of its claim if same is not barred by force and reason of said decree of limitation in point of time."

By the certification of the check which the plaintiff seeks to prove, the Cosmopolitan Trust Company appropriated of the money of the drawer the sum of $2,357.76, and held such money on deposit payable "When properly Endorsed" to the holder on demand. G. L. c. 107, §§ 210, 212. 5 Uniform Laws Ann. 507, 517. The certification, on indorsement, created a new contract between the trust company and the United States holding the check in its governmental capacity. *Meuer* v. *Phenix National Bank,* 94 App. Div. (N. Y.) 331; affirmed in 183 N. Y. 511.

Speaking for the court in *United States* v. *Nashville, Chattanooga & St. Louis Railway,* 118 U. S. 120, 125, Mr. Justice Gray said: "It is settled beyond doubt or controversy — upon the foundation of the great principle of public policy, applicable to all governments alike, which forbids that the

public interests should be prejudiced by the negligence of the officers or agents to whose care they are confided — that the United States, asserting rights vested in them as a sovereign government, are not bound by any statute of limitations, unless Congress has clearly manifested its intention that they should be so bound." Referring to the words last quoted Mr. Justice Clarke in *United States* v. *Whited & Wheless, Ltd.* 246 U. S. 552, at page 561 said: " . . . this principle has been accepted by this court as requiring not a liberal, but a restrictive, a strict, construction of such statutes when it has been urged to apply them to bar the rights of the Government."

It is settled with equal definiteness that the United States is not barred by a State statute of limitations when the United States sues in a State court. *Chesapeake & Delaware Canal Co.* v. *United States*, 250 U. S. 123, 125. *E. I. Dupont De Nemours & Co.* v. *Davis*, 264 U. S. 456, 462. *Missouri* v. *Duncan*, 265 U. S. 17. *Davis* v. *Corona Coal Co.* 265 U. S. 219, 222, 223.

The doctrine of laches is not applicable to the Government. *United States* v. *Kirkpatrick*, 9 Wheat. 720. *Utah Power & Light Co.* v. *United States*, 243 U. S. 389, 409. " . . . and this maxim is founded, not in the notion of extraordinary prerogative, but upon a great public policy." *United States* v. *Kirkpatrick, supra,* 735. "No laches can be imputed to the government, and against it no time runs so as to bar its rights." Parsons, Chief Justice, in *Stoughton* v. *Baker,* 4 Mass. 522, at page 528.

Giving force to these principles, it is plain that the United States would not have been barred from proof of its claim had the limitation been expressed in the liquidation statute G. L. c. 167, § 28; see cases cited *supra.* The fact that the Legislature has conferred by necessary implication authority upon this court to establish a limitation of time after which new litigation must cease, *Suffolk Knitting Mills* v. *Cosmopolitan Trust Co.* 252 Mass. 394, does not import a legislative purpose to include within the field of its operation the United States or the Commonwealth. *United States* v. *Whited & Wheless, Ltd., supra.* We find nothing in the contention of the defendant that the principle invoked by the plaintiff is not

as applicable to proceedings *in rem* as to actions *in personam* or in real actions.

If the claim should have been received and allowed, the plaintiff contends it is entitled to priority under § 3466 of U. S. Rev. Sts. which reads as follows: "Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority hereby established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

Of this statute, which is in substance a reënactment of Act of March 2, 1799, c. 22, § 65; 1 U. S. Sts. at Large, 676, the court in *Beaston* v. *Farmers' Bank of Delaware*, 12 Pet. 102, said at page 133: "From the language employed in this section, and the construction given to it from time to time by this court, these rules are clearly established: first, that no lien is created by the statute; secondly, the priority established can never attach while the debtor continues the owner, and in the possession of the property, although he may be unable to pay all his debts; thirdly, no evidence can be received of the insolvency of the debtor, until he has been devested of his property in one of the modes stated in the section; and, fourthly, whenever he is thus devested of his property, the person who becomes invested with the title is thereby made a trustee for the United States, and is bound to pay their debt first out of the proceeds of the debtor's property."

It is the contention of the defendant that the statute refers to such insolvency as is determined by judicial decree, or under the bankrupt act; or is manifested by the debtor's voluntary assignment of his property or by its attachment under process against him as an absconding, concealed or absent debtor; and that within this meaning the Cosmopolitan Trust Company never became insolvent, and therefore,

the provisions giving priority of payment to demands of the United States do not apply. *United States* v. *Fisher*, 2 Cranch, 358. *United States* v. *Hooe*, 3 Cranch, 73. *Prince* v. *Bartlett*, 8 Cranch, 431. *United States* v. *Howland*, 4 Wheat. 108. *Conard* v. *Atlantic Ins. Co. of New York*, 1 Pet. 386. *Equitable Trust Co. of New York* v. *Connecticut Brass & Manuf. Corp.* 290 Fed. Rep. 712. *Bramwell* v. *United States Fidelity & Guaranty Co.* 299 Fed. Rep. 705.

Of the right of the United States to priority, Chief Justice Shaw in *Commonwealth* v. *Phœnix Bank*, 11 Met. 129, at page 151 said: "It is established by a series of authorities, that insolvency alone, incapacity to pay all the debts which the debtor owes, is but one circumstance only to bring the case within the statute. It must be insolvency, accompanied with the circumstance that there has been a general assignment by the voluntary act of the debtor, or a legal bankruptcy or insolvency. It is not sufficient that a debtor is incapable of paying his debts, and that the winding up of his affairs is effected, in whole or in part, by legal proceedings. Under the attachment laws of Massachusetts, the whole of a debtor's property might be attached at the suits of various creditors, and be insufficient to satisfy all his debts. It might be sold and converted into money, in a course of legal proceedings, by the sheriff, and the whole of the money, thus in the custody of the law, be paid out to creditors; and yet the United States can assert no priority. *Bartlet* v. *Prince*, 9 Mass. and 8 Cranch, *ubi sup.* So if a debtor should assign different portions of his property, by different instruments, to trustees, for several creditors or classes of creditors, though legal proceedings might be resorted to by creditors to enforce such trusts, yet if it were not a general assignment, nor a legal bankruptcy, it would not let in the claim for priority given to the United States by the statute. Congress might have made this act so extensive in its operation as to provide that in all cases, where a debtor's property is brought under custody of the law by sequestration, attachment, or compulsory or voluntary assignment, to be distributed amongst creditors, the United States should have priority. But we think the statute in its terms, and the judicial con-

struction which has been uniformly given to it, is not thus extensive, but is limited to the particular cases specified. These cases, we think, are well stated in the case of *Beaston* v. *Farmers' Bank of Delaware,* 12 Pet. 133."

In *Beaston* v. *Farmers' Bank of Delaware, supra,* the court held that the fact, that a receiver had been appointed to take possession of property of the debtor bank, would not amount to such a divestiture of the debtor's property as would give the United States priority and "would not have been a transfer and possession of the property." And in *Commonwealth* v. *Phœnix Bank, supra,* it was held that the United States could not claim priority of payment although the bank did not have sufficient property to pay all its debts. In *United States* v. *Oklahoma,* 261 U. S. 253, 260, 261, it is said: "If priority in favor of the United States attaches at all, it takes effect immediately upon the taking over of the bank. . . . But the word 'insolvent' is used in different senses. Section 3466 makes it apply only in cases where the debtor 'not having sufficient property to pay all his debts,'" makes a voluntary assignment.

None of the acts referred to in § 3466 accompanied and gave character to the trust company's inability to pay its debts prior to the taking over of the assets of the trust company. Insolvency within the meaning of § 3466 was not necessary to justify the taking possession by the commissioner of banks, and no inference of insolvency under that section can be inferred therefrom.

It results that the United States should be allowed to present its claim as of September 14, 1923, and now receive, if the claim be allowed, such dividends as a non priority claim of $2,357.76 would have received if presented and allowed on that date. It further follows that the claim of priority is disallowed.

*Decree accordingly.*