## UNITED STATES v. PEOPLE'S TRUST CO. et al.

(District Court, D. New Hampshire. January 22, 1927.)

No. 165.

1. **Banks and banking** ⊕⟹317—**Under state statute, assets of savings department of trust company are impressed with trust, and cannot be used to satisfy debts of mercantile department (Pub. Laws N. H. 1926, c. 268, § 29).**

Under Pub. Laws N. H. 1926, c. 268, § 29, relating to the distribution of proceeds of property of an insolvent banking institution, assets of savings department of trust company are impressed with a trust for the benefit of depositors in that department, and cannot be used to satisfy debts of the mercantile department.

2. **United States** ⊕⟹76—**Statute declaring preference for claims of United States against insolvent estates should be liberally construed (Rev. St. § 3466 [Comp. St. § 6372]).**

Rev. St. § 3466 (Comp. St. § 6372), declaring a preference in favor of claims of the United States against insolvent estates, being intended to secure adequate public revenue, should be liberally construed.

3. **United States** ⊕⟹76—**Claimants of exemption from statute preferring claims of United States against insolvent estates have burden of proof (Rev. St. § 3466 [Comp. St. § 6372]).**

Persons claiming exemption from the operation of Rev. St. § 3466 (Comp. St. § 6372), declaring a preference in favor of claims of the United States against insolvent estates, have burden of showing that they are not within its provisions.

4. Banks and banking ⟨⟩317—Claim of United States for postal funds deposited with trust company in course of liquidation held entitled to preference (Rev. St. U. S. §§ 3466, 3467 [Comp. St. §§ 6372, 6373]; Pub. Laws N. H. 1926, c. 268; Bankruptcy Act, § 3a, subd. 4 [Comp. St. § 9587]).

Under Rev. St. U. S. §§ 3466, 3467 (Comp. St. §§ 6372, 6373), claim of the United States for postal funds deposited in trust company in hands of bank commissioner for liquidation under Pub. Laws N. H. 1926, c. 268, was entitled to preference, notwithstanding bank was closed, for express reason that public good required it rather than on ground of insolvency; it being in fact insolvent and assumption of control by commissioner equivalent to placing of receiver or trustee in charge, under Bankruptcy Act, § 3a, subd. 4 (Comp. St. § 9587), as it existed prior to amendment of May 27, 1926 (44 Stat. 662).

In Equity. Suit by the United States against the People's Trust Company and others. Decree for plaintiff, after dismissal of suit as to all defendants, except the one named.

Raymond U. Smith, of Woodsville, N. H., U. S. Atty.

Robert W. Upton, of Concord, N. H., and F. N. Parsons, of Franklin, N. H., for People's Trust Co. and others.

F. N. Parsons, of Franklin, N. H., for Frederick S. Nutting.

MORRIS, District Judge. This is a bill in equity, filed November 12, 1925, to establish a preference in favor of the United States, as to $2,221.40 of postal funds deposited in the defendant bank and to recover the same.

The People's Trust Company was incorporated by act of the New Hampshire Legislature, approved May 21, 1913, to be located at Lebanon, N. H., with authority to have and execute all the powers and privileges incident to corporations of a similar nature, for the purpose of prosecuting the business of a safe deposit and trust company; to receive on deposit, or for safekeeping, money or other valuables, the funds of trustees, guardians, administrators, or others. Session Laws, N. H. 1913, c. 426.

On January 13, 1925, the then bank commissioners of the state of New Hampshire presented to the superior court a petition of which the following is a copy with the court's order thereon:

"State of New Hampshire, Grafton—ss.
     Superior Court, Jan. Term, 1925.

"To the Honorable Justice of the Superior Court;

"Respectfully represents the undersigned, bank commissioners of the state of New Hampshire, that from an examination of the affairs of the People's Trust Company, a corporation duly established by law at Lebanon, in the county of Grafton, it is judged by them to be necessary for the public safety that said corporation should not continue to transact business.

"Wherefore they pray that said corporation and its officers be prohibited by an injunction from receiving or paying deposits.

"Frederic S. Nutting.
"Leon O. Gerry.
"George E. Farrand.

"Upon considering the foregoing petition, it is ordered that the People's Trust Company, its officers, agents, and attorneys, be and the same are strictly enjoined and restrained from receiving or paying deposits, unless this injunction be modified or dissolved by the superior court or some justice thereof.

"Dated this 13th of Jan., 1925.

"William H. Sawyer,
"Justice of the Superior Court."

Upon a further like petition filed January 30, 1925, the bank commissioners above named were ordered by the superior court to take possession forthwith of the property and business of the bank and retain possession until said bank shall resume business or its affairs shall be liquidated as provided by law.

The bank accepted service of the petition. It did not contest the allegations therein and it allowed an order to be made by the superior court without filing an answer.

With the approval of the court, the commissioners appointed the defendant James E. Farrell to assist them and to perform such duties as they might direct with reference to the affairs of the bank. On or about February 21, 1925, the defendant Frederic S. Nutting resigned as a bank commissioner. By an act of the New Hampshire Legislature approved April 29, 1925 (Session Laws N. H. 1925, c. 143), the bank commission was reorganized to take effect July 1, 1925, and the defendants Gerry and Farrand then went out of office.

During the intervening time between February 21, and July 1, 1925, the defendants Gerry and Farrand continued in possession of the property and business of the bank.

The new law provided, in place of a bank commission consisting of three persons, a bank commissioner and a deputy bank commissioner, who should perform the duties previously required of the bank commission. On or about July 1, 1925, the defendant

Farrand was appointed and qualified as deputy bank commissioner.

Farrand, acting as deputy bank commissioner by order of the superior court, and James E. Farrell acting as his agent, had possession of the property and business of the People's Trust Company from July 1, 1925, until the defendant Arthur E. Dole was appointed and qualified as bank commissioner, on or about October 1, 1925, since which time defendants Dole, Farrand, and Farrell have had possession of all the property and assets of the bank and are proceeding with the business of liquidating its affairs.

January 9, 1926, the several individual defendants moved to dismiss the bill as to them, and on the 24th day of April, 1926, each filed an amended motion to dismiss, setting out, among other reasons, that this court has no jurisdiction of the case. Questions raised by the several motions were heard, and on May 10, 1926, a rescript was filed sustaining the court's jurisdiction and dismissing the bill as to Gerry and Nutting, *"not for want of jurisdiction, but because their presence as parties defendant appears to be no longer necessary."*

The affairs of the People's Trust Company are in process of liquidation by the defendants Dole, Farrand, and Farrell, under the provisions of Public Laws N. H. c. 268.

The original proceedings were inaugurated under sections 1 and 2 of said act which provide as follows:

Section 1—"If any institution under the supervision of the bank commissioner shall refuse to permit an examination of its affairs by the commissioner, or to furnish the necessary facilities therefor, or shall violate its charter or any law of this state after having been notified in writing by the Commissioner of such violation, or if at any time it appears to the commissioner that its business is being conducted in an unsafe or unauthorized manner, or that it is necessary for the public safety that it should not continue to transact business, the commissioner may represent the fact by petition to some Justice of the superior court."

Section 2—"The court may issue an injunction prohibiting, as far as may be thought necessary, the transaction of any business of said institution, and the commissioner shall cause the same to be served. Any justice of the superior court, upon petition and notice to the commissioner, may dissolve, modify, continue or extend such injunction as equity may require. If in the opinion of said justice the public good requires he may direct the commissioner to take possession forthwith of the property and business of such institution, and he may retain possession thereof until it shall resume business, or until its affairs shall finally be liquidated as herein provided; and upon completing such liquidation the charter of such institution shall be vacated."

Section 4 of said act reads as follows:

"Whenever it appears to the commissioner that the assets of any institution to which this chapter applies are reduced in value below ninety per cent. of the amount due its depositors or creditors, the commissioner shall represent the facts by petition to some justice of the superior court, who shall direct the commissioner to take possession of the property and business of such institution and retain possession thereof until it shall resume business, or until its affairs shall finally be liquidated as herein provided; and upon completion of such liquidation the charter of such institution shall be vacated."

Section 10 of the act provides that the commissioner may appoint agents to assist him to perform such duties connected with the business of such institution as he may deem proper.

Section 13 provides that the commissioner shall cause notice to be published calling on all persons who may have claims against such institutions to present the same to the commissioner, and to make legal proof thereof at a place and time not earlier than the last day of publication to be therein specified.

Section 14 provides that, if the commissioner doubts the justice and validity of any claim, he may reject the same, and serve notice of such rejection upon the claimant.

Section 15 provides that action upon claims so rejected shall be brought within six months after such service of notice.

Section 17 requires the commissioner upon the expiration of the time fixed for the presentation of claims to make in duplicate a full and complete list of the claims presented, including and specifying such claims as have been rejected by him, one copy of which shall be filed in the office of the commissioner, and the other in the office of the clerk of court.

Section 19 provides that at any time after the expiration of the date fixed for the presentation of claims, upon application of the commissioner, the court may authorize him to declare a dividend.

Section 29 provides that the proceeds of the property of an insolvent institution shall be distributed according to the decree of the court (1) to pay the expenses of the liqui-

dation; (2) for the payment in equal proportion of all debts, claims, and obligations owing by the institution; (3) the remainder to be divided among the stockholders according to their interests.

It appears that on January 13, 1925, when the bank was closed by order of the superior court, Herbert E. Walbridge, postmaster at Enfield, N. H., had on deposit in the mercantile department of the People's Trust Company, the sum of $2,207.80 of the postal funds of the United States, and Ruth G. Gordon, acting postmaster at Canaan, N. H., had on deposit in the mercantile department of the bank a like deposit of $13.60. By regulation of the Post Office Department, such postmasters were entitled to so deposit such funds, and the money so deposited was and remains the property of the United States.

The said postmasters have duly assigned, set over, and transferred all their rights, title, and interest in and to said funds to the Postmaster General of the United States, of which assignment due notice was given to the defendant Farrell, as agent for the bank commissioner.

June 8, 1925, was fixed as a time in which presentation of claims against the bank should be made. Proofs of the claims were seasonably made and presented to the commissioner on behalf of the United States, and a demand made for payment thereof in full under the provisions of Revised Statutes U. S. § 3466 (Comp. St. § 6372). The claims were allowed by the commissioner as to amounts, but disallowed as to preference. Within six months after such disallowance this action was brought.

It appears that the plaintiff complied with all the state statutory obligations to have its claim properly allowed by the commissioner, and when disallowed as to preference this action was seasonably brought. See United States v. Adams (D. C.) 9 F.(2d) 624, 626.

The People's Trust Company maintained a mercantile department and a savings department. These departments, under the state law, are supposed to be kept separate and distinct. Public Statutes, c. 165, § 18; P. L. c. 264, § 9.

[1] The plaintiff claims that under the provisions of P. L. c. 268, § 29, to which reference is made above, that upon liquidation *no distinction can be made* between the debts of the *commercial department* and those of the *savings department*.

I cannot agree with counsel for the plaintiff that section 29 has this effect, although it was enacted since the decision of the New Hampshire Supreme Court in the case of Bank Commissioners v. Trust Co. (1908) 75 N. H. 107, 71 A. 377.

I hold that the assets of the savings department are impressed with a trust for the benefit of depositors in that department, and cannot be used to satisfy debts of the mercantile department. I think the words of section 29, "for the payment in equal proportion of all debts, claims and obligations owing by the institution," must be construed with other provisions of the law, and that each department is to be considered as an institution by itself.

Two dividends, one of 33⅓ per cent. and another of 25 per cent., have been declared and paid from the savings department. It is estimated that the total of dividends of that department will eventually approximate 70 per cent.

No dividend has been declared from the assets of the mercantile department, and if anything is paid on the debts of that department the amount will be very small. Nothing has been paid on the claims in suit.

The People's Trust Company has realized on two bonds of its treasurer, one for $37,500, allocated to the mercantile department, and one for $40,000, in the savings department. It seems to me that the question of the separate departments, in so far as it relates to funds with which to satisfy any judgment that may be found against the People's Trust Company in this case, has become a moot question, because there are sufficient assets in either department to pay the plaintiff's claim in full.

The treasurer of the People's Trust Company juggled the securities and assets of the separate departments back and forth, and after the bank was taken over by the bank commissioners it was found that securities belonging to the savings department had been pledged in Boston and Manchester banks for loans, the proceeds of which had been used in the mercantile department. Not finding sufficient funds in the mercantile department to redeem these securities, they were redeemed by money taken from the savings department and restored to that department. Later, by an order of the superior court, the money used for their redemption was repaid out of the assets of the mercantile department. The amount used for such redemption and restoration was approximately $181,000, and depleted the assets of the mercantile department to that amount.

The dates of repayment were March 24, 1925, and May 9, 1925. The plaintiff claims

that, if the departments are to be considered as two separate institutions, such payments were preferential, and that the mercantile department committed an act of bankruptcy. I do not find it necessary to rule upon this question, as I prefer to found my decision upon other grounds. The claims of the plaintiff are stated, that it may have whatever advantage may be derived therefrom in event of my decision not being well founded.

The order of the superior court was made upon petition and notice to all creditors of the commercial department by publication three successive weeks in a newspaper printed at Lebanon, N. H.

The combined assets of the People's Trust Company in both its departments are insufficient to pay in full its debts, and it is and was on January 30, 1925, insolvent in fact. Its assets were reduced in value below 90 per cent. of the amount due its depositors and creditors. At the time of the demand upon it for payment by the plaintiff, it was in process of liquidation as an insolvent institution.

The book values of the assets of the mercantile department as of January 13, 1925, showed $617,000 as against $608,000 liabilities. These figures do not include obligations to other banks, for which securities of the savings department were pledged.

*The bank commissioners on January 30, 1925, had reason to believe and did believe the bank was insolvent.* While this may not have been the *only* reason, *I find that it was the compelling reason,* for the allegation made by the commissioners that *"the public good required"* the taking over of the bank.

Revised Statutes of United States, § 3466 (Comp. St. § 6372), provides as follows:

"Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority hereby established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

Section 3467 (Comp. St. § 6373) reads as follows:

"Every executor, administrator, or assignee, or other person, who pays any debt due by the person or estate from whom or for which he acts, before he satisfies and pays the debts due to the United States from such person or estate, shall become answerable in his own person and estate for the debts so due to the United States, or for so much thereof as may remain due and unpaid."

The plaintiff relying upon the case of Bramwell v. U. S. Fidelity & Guaranty Co. (decided by the United States Supreme Court, January 11, 1926) 269 U. S. 483, 46 S. Ct. 176, 70 L. Ed. 368, claims payment in full from the assets of the bank. The defendant, relying on the case of United States v. Oklahoma, 261 U. S. 253, 43 S. Ct. 295, 67 L. Ed. 638, denies that the plaintiff is entitled to a preference.

[2] Section 3466 of the Revised Statutes is of early origin (1797), and has been before the court for construction and application in numerous cases. Its object is to secure adequate public revenue to sustain the public burden (United States v. State Bank of North Carolina, 6 Pet. 29, 35, 8 L. Ed. 308), and to that end it is to be construed liberally. [3, 4] All debtors of the United States, whatever their character, and by whatever mode bound, may be fairly included within the language of section 3466. It is manifest that Congress intended to give priority of payment to the United States over all other creditors in the cases stated therein. It therefore lies upon those who claim exemption from the operation of the statute to show that they are not within its provisions. Beaston v. Farmers' Bank, 12 Pet. 102, 134, 9 L. Ed. 1017.

The bill alleges, and defendant's answer *admits,* that the People's Trust Company, at the time of the beginning of the proceedings in the superior court, *was and since has been unable to pay its debts in full,* and that its *assets, at a fair valuation thereof, then were and ever since have been insufficient to pay its debts in full.*

It is conceded that by decree of the state court the bank has been divested of the possession of its money or property and that its affairs are in process of liquidation. The bank commissioner is in possession by operation of law charged with the duty of reducing its assets to cash and paying its debts so far as the assets are sufficient for the purpose.

All the conditions for the application of section 3466 appear to be present: An insolvent debtor that is dispossessed of its property by bank commissioners, who by operation of law are charged with the duty of

liquidating its affairs in the interest of its creditors.

Mr. Justice Butler, in the Bramwell Case, says:

"The act applies to all debts due from deceased debtors, whenever their estates are insufficient to pay all creditors, and extends to all debts due from insolvent living debtors when their insolvency is shown in any of the ways stated in section 3466. The decisions of this court show that no lien is created by the statute; that priority does not attach while the debtor continues the owner and in possession of the property; that no evidence can be received of the insolvency of the debtor until he has been divested of his property in one of the modes stated; and that, 'whenever he is thus divested of his property, the person who becomes invested with the title, is thereby made a trustee for the United States, and is bound to pay their debt first out of the proceeds of the debtor's property.'"

Defendants place their claim upon the words "has been divested of its property *in one of the modes stated.*" They say the People's Trust Company was not so divested, citing United States v. Oklahoma, 261 U. S. 253, 43 S. Ct. 295, 67 L. Ed. 638; United States v. Commissioner of Banks (Mass.) 149 N. E. 883.

It is true that the bank commissioners, in their application to the court, proceeded under sections 1 and 2 of the New Hampshire statute above quoted. Insolvency was not a necessary allegation, and was not in fact alleged. Defendant's Exhibit filed November 22, 1926. There is no deceased debtor, and there was no assignment of assets for the benefit of creditors, as there was in the Bramwell Case.

The first clause of section 3466 is definite that a debt due the United States from an insolvent debtor, or from the insolvent estate of a deceased debtor, shall first be satisfied, and except for a long line of decisions, by which the language of the first part has been limited by what follows, it would appear to include all insolvent estates in process of liquidation. Read in connection with section 3467, such a construction would be borne out. But the last part of section 3466, instead of being held illustrative or explanatory, has been held to be a limitation of the simple and understandable language of the first clause.

It has been held that insolvency must be shown in one of three ways: (1) By voluntary assignment; (2) by attachment of the estate and effects of an absconding, concealed, or absent debtor; (3) by an insolvent debtor committing an act of bankruptcy.

It is apparent that the case does not fall within the first two classes. It remains to inquire if it comes within the meaning and intent of the third clause.

The present bankruptcy law does not apply to banks, but it was held in the Bramwell Case that that fact is of no moment as the reference to an act of bankruptcy in section 3466 is for the purpose of defining one of the ways in which a debtor's insolvency may be manifested.

Bankruptcy Act, § 3a (Comp. St. § 9587), defines acts of bankruptcy. Division 4, prior to the 1926 amendment (44 Stat. 662), reads as follows:

"Made a general assignment for the benefit of his creditors, or, being insolvent, applied for a receiver or trustee for his property, or, because of insolvency a receiver or trustee has been put in charge of his property under the laws of a state, of a territory, or of the United States."

If the case falls within any of the three subdivisions last above mentioned, it is the last.

While the status of a bank commissioner has been held in this circuit (Allen v. United States [C. C. A.] 285 F. 678), as that of an executive or administrative officer, and not as a receiver appointed by the court, yet he possesses the powers commonly conferred upon a receiver or trustee. In the Bramwell Case, Mr. Justice Butler, speaking of the state superintendent of banks, a similar officer under the Oregon state laws, says his "duties were in substance the same as those of a trustee having the legal title of property for the purpose of converting it into money to be paid over to specified persons."

In so far as affecting the priority of the statute, I see no distinction between a receiver or trustee authorized by statute to act and one appointed by the court. Their duties are essentially alike, except one acts under authority of and in accordance with the statute, and the other under the direction of the court.

It is urged that the court order of January 30th was not made because of any allegations of insolvency contained in the petition filed by the bank commissioners, and that because of this fact insolvency is not shown in one of the modes pointed out in the priority statute.

The language of the petition, which was followed in the court's order, is:

· "Your petitioners do now further represent that the public good requires that the bank commissioners shall take possession forthwith of the property and business of such institution, and retain possession thereof until the bank shall resume business or its affairs finally be liquidated as provided by law."

If the allegations of the petition had been framed upon the provisions of P. L. N. H. c. 268, § 4, as it fairly might have been from the known facts, it is probable that priority would not have been contested.

The words of the petition, following P. L. N. H. c. 268, § 2, "the public good requires," are comprehensive. They do not definitely show what the trouble was with the bank, or why the public good required it to be closed. The natural inquiry that must follow is: Why does the public good require the bank to be closed? What is the basis for the conclusion? It appears to me that this opens the door for the receipt of evidence to ascertain the underlying facts upon which the conclusion was based. *The real reason why the public good required the taking over of the bank was because it was hopelessly insolvent.*

To deny the application of the priority statute in this case would be giving effect to a mere form of words and disregarding the substantive facts upon which they were predicated. Such a conclusion does not appeal to reason. If that were the law, the bank commissioners, by exercising their right to draft their petition under sections 1 and 2 could always defeat the priority statute and so the state statutes would become instruments to defeat the Federal law. The Supreme Court says: *"The priority given the United States cannot be impaired or superseded by state law."* United States v. Oklahoma, 261 U. S. 253, 260, 43 S. Ct. 295, 298 (67 L. Ed. 638).

Section 3466 has been held applicable to equity receiverships wherein the original petition did not allege insolvency, but where the insolvency was found to exist in fact.

In United States v. Butterworth-Judson Corporation (Decided January 11, 1926) 269 U. S. 504, 46 S. Ct. 179, 70 L. Ed. 380, it is said:

"The intervening petition shows that respondent was insolvent when the creditor's suit was begun, and the question of priority is to be determined on that basis, notwithstanding the complaint alleged and the answer admitted that respondent was solvent."

In the case of Price v. United States (decided January 11, 1926) 269 U. S. 492, 46 S. Ct. 180, 70 L. Ed. 373, Mr. Justice Butler says:

"By answering and joining in the prayer of the complaint, defendant co-operated with the plaintiff to secure the appointment of a receiver to whom it immediately handed over possession and control of all its property and business. While in effect the complaint alleged that defendant was solvent, the facts set forth indicate that it was in a failing condition. And it was found to be insolvent within a short time after the appointment of the receiver. When the assets turned out to be less than the debts, the creditors were entitled to have them dealt with as a trust fund and distributed among them according to their rights and priorities. Under the statute, claims of the United States must first be satisfied."

In the instant case *insolvency is not alleged* in the petition of the bank commissioners but *existed in fact.*

The bank, by accepting service and failing to file an answer, acquiesced in the acts of the bank commissioners as fully as if it had filed an answer admitting the allegations in the petition. It was dispossessed of its property and its affairs have since been in the process of liquidation through the medium of the bank commissioner, who under the New Hampshire statute is the only person charged with the duties of reducing its assets to money and paying its debts in so far as it has available assets.

*I hold that the facts bring the case within the provisions of section 3466, R. S., and that the United States is entitled to priority.* Price v. United States, 269 U. S. 492, 46 S. Ct. 180, 70 L. Ed. 373; United States v. Butterworth-Judson Corporation, 269 U. S. 504, 46 S. Ct. 179, 70 L. Ed. 380; Davis v. Pullen (C. C. A.) 277 F. 650.

Counsel may present a form of decree in accordance with this rescript.