## RAPHAEL v. MONROE.

### No. 2675.

Circuit Court of Appeals, First Circuit.

June 27, 1932.

MORTON, Circuit Judge, dissenting.

Mark M. Horblit and Benjamin Goldman, both of Boston, Mass., for appellant.

Andrew J. Aldridge and Carl F. Schipper, Jr., both of Boston, Mass., for appellee.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

BINGHAM, Circuit Judge.

This is an appeal from an order entered December 7, 1931, in the District Court for Massachusetts in connection with receivership proceedings brought against The Monroe Stores, Inc., enjoining the appellant, Louis Raphael, from further prosecuting a certain suit in the superior court of Suffolk county, Mass., except that he might proceed in said cause to judgment, but no further.

The receivership bill was brought against The Monroe Stores, Inc. (hereafter called The Stores), on July 14, 1930, by J. B. Hirshfield & Co., Inc., and other creditors, and later, on July 23, 1930, George B. Monroe of Quincy, Mass., who was the treasurer of The Stores, was appointed receiver. In compliance with an order of the District Court requiring all persons holding claims against The Stores to present their proof to the receiver for allowance on or before September 30, 1930, Louis Raphael, a citizen and resident of Connecticut, presented his proof of claim on September 25, 1930, and on or about February 9, 1931, it was duly proved and allowed in the sum of $35,000.

Shortly prior to November 26, 1930, one Harold F. Dempsey made an offer to purchase from the receiver all the assets of The Stores, and by the terms of the offer as interpreted and agreed to by the parties he was to pay to its creditors 30 per cent. of their claims within thirty days after they had been duly proved and allowed; also to pay within thirty days after allowance the liabilities of the receiver and his expenses. With this offer a bond was filed running to the United States of America and signed by Harold A. Dempsey, as principal, and Louis F. Buff and Clifford S. Drake, as sureties. This bond was in the penal sum of $100,000 and conditioned on compliance "with all the conditions and items of said offer." The bond was duly approved, the offer accepted, and on November 27, 1930, the assets of The Stores were turned over to Dempsey by the receiver.

The amount to be paid Raphael under this offer was $10,500. On March 23, 1931, more than thirty days after his claim against The Stores had been proved and allowed and after having been paid $1,200 thereon by Dempsey, Raphael "as creditor of said Monroe Stores, Inc.," filed a petition for leave to institute proceedings on the bond and, on the same day, leave was granted by the court.

April 9, 1931, Raphael brought suit on the bond in the superior court of Massachusetts in which he "obtained and now has attach-

ments upon the property of said defendants Drake and Buff, and injunctions restraining the transfer by them of certain property to secure the payment of the amount justly due him." In hearings in the state court before a master, to whom the case was referred, both the receiver and his counsel testified. This case was prosecuted by Raphael to a point where, on November 13, 1931, it was ripe for the entering of a final decree against the signers of the bond and in favor of Raphael.

In the meantime, on April 16, 1931, the receiver filed in the receivership proceedings an ancillary bill of complaint against Dempsey, Buff, and Drake, as obligors on the bond, and on May 4, 1931, an interlocutory injunction issued enjoining them from transferring or incumbering their property "until the further order of this court." On July 16, 1931, after notice and hearing, and all parties to the bill consenting, a decree was entered in which it was "ordered, adjudged and decreed that judgment for the plaintiff in the sum of $33,-026.83 together with costs be entered against the defendants" Drake, Buff, and Dempsey, jointly and severally, and that execution issue forthwith. In this sum of $33,026.33 the claim of Raphael was included, but he was not a party to and did not participate in the proceedings and did not authorize the receiver to act for him therein.

The receiver obtained nothing on the execution and on October 7, 1931, filed in the District Court a petition for contempt as to defendants Buff and Drake on various grounds. The hearing on this petition resulted in an order directing Buff and Drake to pay the receiver $1,000 on the 20th of October, 1931, and a like sum on the 20th of each month thereafter until the execution issued on the judgment was satisfied; the final disposition of the matter being held pending further orders of the court.

On November 27, 1931, the receiver, appellee here, filed in the original receivership proceedings a motion seeking to have the order of March 23, 1931, granting Raphael leave to bring suit on the bond, modified and that Raphael be enjoined from further prosecuting his cause of action in the Massachusetts court "except insofar as to reduce his claim to judgment." A preliminary injunction against Raphael and an order of notice to show cause was issued, which was served on Raphael's attorney. On December 3, 1931, Raphael appearing specially filed a plea in which he set out the facts in connection with his suit in the state court in detail, asserting that the receiver had no legal in-

terest or standing to entitle him to an order interfering with the state court proceeding; that he was not a party to the proceeding either individually or as receiver; that he had no interest in his (Raphael's) claim; that the receiver in no way represented Raphael and had at no time been authorized to bring proceedings in his behalf; that at the time of filing the ancillary bill of complaint in the receivership proceedings, the proceeding in the state court had already been commenced and was pending; that Raphael was not made a party to the ancillary bill of complaint and had never taken any part in the hearings thereon or in the contempt proceedings; that he was a resident of Connecticut and no personal service had been made upon him; that having knowledge of the order granting Raphael leave to bring suit against Dempsey, Drake, and Buff on the bond and of the subsequent proceedings thereunder the receiver is barred and estopped from attempting to obtain a modification of said order; that he (Raphael) was not interfering or attempting to interfere in any way with the receivership; that said receiver had disposed of all the property of The Stores which came into his hands; and that Drake and Buff were amply able to pay his (Raphael's) claim and such payment would not interfere with the collection by any of said other creditors of the amounts due them. Raphael filed with his plea the report of the master in the state court proceeding.

After a hearing on the receiver's motion to modify and the plea of Raphael, an order was entered by the court modifying said order and restraining the appellant from further prosecuting the suit in the state court except that he might proceed in that cause to judgment but no further. This is the order here appealed from.

The assignments of error are twelve in number, but the appellant in his brief has reduced them to six questions:

1. Whether the appellee had any legal standing or interest to entitle him to the order, he having no interest in the state suit.

2. Whether the court had jurisdiction over the appellant, he being a citizen and resident of Connecticut and not having been personally served with the order of notice.

3. Whether the District Court erred in enjoining the appellant from prosecuting his action in the state court, the injunction interfering with appellant's legal right to sue in the state court.

4. Whether equitable principles of laches and estoppel should have been applied.

5. Whether the order was warranted on general principles of equity.

6. Whether the order could lawfully be entered on the "motion."

It is unnecessary to consider the first question as the appellee does not base his right to the injunction on any interest he may have in the suit in the state court but on the ground that the District Court has exclusive jurisdiction of actions on the bond given in the receivership proceedings, the bond, as alleged by him, taking the place of the receivership assets.

The fundamental inquiry is whether the District Court had, by reason of the receivership proceedings, such jurisdiction of the subject matter of the suit in the state court as to authorize it to issue an injunction restraining its further prosecution.

█ It is well settled that a federal court has no power to enjoin a suit in a state court unless the res in its custody is affected or interfered with (Guardian Trust Co. v. Kansas City Ry. Co. (C. C. A.) 146 F. 337, 340; Id. (C. C. A.) 171 F. 43, 28 L. R. A. (N. S.) 620; Kline v. Burke Construction Co., 260 U. S. 226, 43 S. Ct. 79, 67 L. Ed. 226, 24 A. L. R. 1077) or its jurisdiction is in some other way defeated or impaired. Hull v. Burr, 234 U. S. 712, 723, 34 S. Ct. 892, 58 L. Ed. 1557; Julian v. Central Trust Co., 193 U. S. 93, 24 S. Ct. 399, 48 L. Ed. 629.

█ The receiver does not question this proposition, but contends that in this case the bond is the res in the receivership proceedings; that it stands for and is held by him as a substitute for the assets of The Stores (Dietzsch v. Huidekoper, 103 U. S. 494, 26 L. Ed. 497); and that a suit by a creditor on the bond in another court would defeat and impair the jurisdiction of the federal court previously acquired.

We think this contention as applied to the admitted facts of this case is not sound. It might be said that a bond would take the place of the property purchased, if Dempsey had promised to pay the receiver the purchase price (the 30 per cent. of the claims of the creditors). In that case the receiver would have been entitled to receive the money from Dempsey or sue on the bond with the duty of paying out as assets of the estate such funds as he might receive and the District Court would have had exclusive jurisdiction to direct such proceedings. But that is not the situation here. The assets of The Stores were delivered to Dempsey on his promise to pay the creditors 30 per cent. of their claims, and

the liabilities and expenses of the receiver. To protect the creditors a bond was required and given running to the United States of America conditioned on the fulfilment of Dempsey's promise to pay the creditors. Whether this bond was held by the receiver or the clerk of court does not appear, but, in either event, the holder was simply acting as a depository; the parties interested in the bond being the creditors, and the receiver only to the extent of the claims against him as receiver and his expenses. All the assets of the receivership having thus passed from the jurisdiction of the District Court without reservation and the creditors having to look to the purchaser rather than to the receiver for the payment of the dividends on their claims, all that remained for that court to do was to allow the claims of the creditors and settle the account of the receiver. There was no res in the custody of the District Court and there were no matters left over requiring judicial action of that court in relation to the receivership property or to any rights litigated in the receivership proceedings making necessary any further orders or decrees to establish the rights of the parties therein, which were or could be interfered with by the suit in the state court. The suit in the state court is not against The Stores or its assets in the custody of the federal court, but is one in personam against certain parties, strangers to the receivership proceedings, who have given a bond conditioned to pay Raphael's claim against The Stores.

Under these circumstances, even if Raphael's suit had been brought against Dempsey, the purchaser, and any assets of The Stores which he had purchased and which might have been in his possession had been attached to satisfy any judgment obtained therein, the jurisdiction of the District Court would not have been defeated or impaired, for it had parted with all interest in and control over those assets. A fortiori this is so where the property attached or sequestered in a suit is property in which the receivership estate never had an interest and the suit is on a bond in which the receiver, except as pointed out above, never had an interest.

No leave of court to sue the obligors on the bond was necessary. But if it was, the suit was not to assert a claim against assets in the custody of the District Court, but was one in personam against the principal and the sureties on the bond.

█ Again, whatever the order granting leave to sue amounted to, it was a final decree (Odell **v. H. Batterman Co. [C. C. A.]** 223

F. 292), was granted on March 23, 1931, and could not be modified or revoked on December 7, 1931, after the term at which it was entered had expired, and the court had lost control of the matter.

Then again, after Raphael had been granted leave to sue and had commenced proceedings in personam in the state court, that court obtained jurisdiction and "the rule that, when the jurisdiction of a court, and the right of a plaintiff to prosecute his suit in' it have once attached the right cannot be restrained by proceedings in any other court, applies to protect the jurisdiction of the State court unless the case is within some recognized exception to section 265 of the Judicial Code [28 USCA § 379]." Riehle v. Margolies, 279 U. S. 218, 223, 49 S. Ct. 310, 312, 73 L. Ed. 669. Here, as in that case, "there is no basis for any such exception."

Furthermore, the state court, having rightfully taken jurisdiction of Raphael's bill against Dempsey and his sureties on the bond, had by means of attachments of tangible property of the defendants Drake and Buff and orders restraining them from transferring or encumbering their other property, the judicial custody of such property, and valid legal and equitable liens thereon were created in favor of the plaintiff. Snyder v. Smith, 185 Mass. 58, 69 N. E. 1089; Rioux v. Cronin, 222 Mass. 131, 109 N. E. 898; Metcalf v. Barker, 187 U. S. 165, 23 S. Ct. 67, 47 L. Ed. 122; Pickens v. Roy, 187 U. S. 177, 23 S. Ct. 78, 47 L. Ed. 128. And assuming that the ancillary bill brought by the receiver in the receivership proceedings was in the nature of a creditor's bill brought for his benefit and all others similarly situated, the injunction issued by the District Court on the filing thereof could not avail to give that court jurisdiction over property already rightfully in the custody of the state court. Covell v. Heyman, 111 U. S. 176, 4 S. Ct. 355, 28 L. Ed. 390; Pickens v. Roy, 187 U. S. 177, 23 S. Ct. 78, 47 L. Ed. 128; Kline v. Burke Construction Co., 260 U. S. 226, 43 S. Ct. 79, 67 L. Ed. 226, 24 A. L. R. 1077. In any event if, by the preliminary injunction, any right or power could, under the circumstances disclosed, have been obtained over the property of Dempsey, Buff, and Drake, it was lost when the injunction was dissolved by the final decree in the District Court, not having continued the injunction. Sweeney v. Hanley (C. C. A.) 126 F. 97; Gardner v. Gardner, 87 N. Y. 14.

In the plea of Raphael it is alleged that "Drake and Buff are possessed of property of a value far in excess of the amount of their obligation to said Raphael and to the other creditors * * * whose claims have been proved and allowed"; and that Drake and Buff are "amply able forthwith to pay said obligation to said Raphael * * * and that such payment to him will not interfere with the collection by any of said other creditors of the amounts due them." In the preparation of the record on this appeal it was agreed by the parties that "the statements set forth in the plea of Louis Raphael * * * with respect to said proceedings in the Suffolk Superior Court * * * and with respect to the proceedings in said United States District Court * * * are true." It is evident, therefore, that no question of preference by Raphael over the other creditors is involved.

The suggestion that the order of the District Court allowing Raphael to bring suit on the bond in the state court was a nullity is based on the idea that the jurisdiction of the District Court over that suit was exclusive, and that it was exclusive because the United States had an interest in the bond and therefore was a real party plaintiff within the meaning of section 24 of the Judicial Code (28 USCA § 41). The United States was a nominal party only; it had no interest in the bond or the suit upon it. The relator, Raphael, was the real plaintiff. Howard v. United States, 184 U. S. 676, 680, 22 S. Ct. 543, 46 L. Ed. 754.

Then again, if the United States had been a real party plaintiff within the meaning of the first paragraph of section 24, the District Court then would not have had exclusive jurisdiction, for section 24 only confers original jurisdiction. Section 256 of the Judicial Code (28 USCA § 371) defines the "cases and proceedings" over which the courts of the United States have exclusive jurisdiction. It does not include suits where the United States is a party plaintiff as defined in the first paragraph of section 24.

The bond was not a federal statutory bond, and it was optional with Raphael to bring suit upon it either in the federal or state courts, there being diversity of citizenship and the requisite amount involved. The decision in U. S. F. & G. Co. v. Kenyon, 204 U. S. 349, 27 S. Ct. 381, 51 L. Ed. 516, is without application in this case. There the bond sued was a federal statutory bond (raised a federal question), but the amount involved was less than $2,000, the then requisite amount. The jurisdiction of the federal court was there upheld under the first clause

of section 24, for the United States had an interest in the bond and was a real party plaintiff.

Taking the view we do as to the questions here discussed, it is unnecessary to deal with the other points raised by the appellant.

The order or decree of the District Court is reversed, and the case is remanded to that court for further proceedings not inconsistent with this opinion, with costs to the appellant.

MORTON, Circuit Judge (dissenting).

The essential facts are simple. In an equity receivership pending in the District Court, the receiver was authorized to sell the property in his custody for payment of the expenses of the receivership and 30 per cent. of all claims which might be filed by a certain date and allowed by the court. To secure payment according to the agreement, the buyer, Dempsey, gave a bond with sureties in the sum of $100,000 running to the United States. Raphael was one of the creditors. He appeared in the receivership proceedings and proved his claim; and it was allowed for $35,000. Dempsey defaulted on his payments. Raphael obtained leave of the District Court to sue Dempsey and his sureties on the bond in the state court. Suit was accordingly brought there by Raphael in the name of the United States of America, on his relation, as plaintiff, and was prosecuted nearly to final judgment. The property of the defendants was attached in that suit and is still held under the attachment. After Raphael's suit had been begun the receiver brought suit on the bond by a supplementary bill in the District Court, in the name of the United States, and a final judgment was entered therein against Dempsey and his sureties for $33,026, which includes the amount due to all creditors including Raphael.

After obtaining this judgment the receiver moved in the District Court that the leave theretofore granted to Raphael to sue in the state court be revoked and further proceedings therein by him be enjoined, except entry of judgment. From the allowance of this motion and the granting of the injunction, the present appeal was taken.

The suit on the bond is clearly within the general jurisdiction of the federal courts. The Judicial Code (section 24 [28 USCA § 41]) provides: "The district court shall have original jurisdiction as follows: First. Of all suits of a civil nature, at common law or in equity, brought by the United States, or by any officer thereof authorized by law to sue," etc. It is well settled that on bonds taken in the name of the United States there is jurisdiction under this statute. Howard v. United States, 184 U. S. 676, 22 S. Ct. 543, 46 L. Ed. 754; U. S. F. & G. Co. v. Kenyon, 204 U. S. 349, 27 S. Ct. 381, 51 L. Ed. 516. The contrary view was followed in United States v. Sheridan (C. C.) 119 F. 236; United States v. Barrett (C. C.) 135 F. 189, which were overruled by the Kenyon decision.

The suit by the receiver and his recovery of a complete judgment covering the claims of all parties under the bond greatly changed the situation from what it was when leave to sue in the state court was granted to Raphael. It became a question whether one creditor should be allowed to press his claim in competition with the receiver who was acting for all creditors and for the estate. In forbidding him from doing so, I think the District Judge was plainly right. The contrary view leads to the curious spectacle of one creditor being permitted to compete against the receiver and the other creditors, to obtain a preference to which he is not entitled, through the means which were adopted to safeguard the payment of the purchase price for which the receivership property was sold. Raphael's complaint against the injunction order is that it deprives him of this advantage and puts him on an equality with the other creditors—which I think is where he belongs, while my brethren apparently think him entitled to his preference.

I also differ from my brethren in their construction of the bond, as being suable by individual creditors for their own benefit. It is conditioned only that Dempsey shall fulfill his contract with the receiver; there is nothing in it about creditors or their claims. In my opinion it was suable only on the relation of the receiver by whom it was taken and with whom the contract which it secured was made. The present bond differs from those given to protect materialmen, in that a receiver is here interposed between the creditors and the obligors. Even as to bonds of this general character, expressly conditioned on the payment of specified claims, I am aware of no case in which they have been held to create such individual rights of action as are here approved. When one creditor sues on them it must be on behalf of all. Under the majority decision, Dempsey's default in payment under his contract set up a free-for-all on the bond, open to all creditors with allowed claims—for it is not to be supposed that the court would grant leave to sue to one and refuse it to another—in which the prize,

the assets of the obligors, goes to the quickest and smartest. It seems to me an unfortunate, as well as an erroneous, result.

Notwithstanding the dictum in the Howard Case, supra, there is, I think, grave doubt whether the state court had any jurisdiction of the suit on the bond in the name of the United States. The words "Of all suits," in section 24, have usually been understood as conferring exclusive jurisdiction. In the entire history the Massachusetts Supreme Judicial Court (according to the table of cases in the digest) only one action, not resting on some special statute, has ever been brought in the name of the United States, U. S. v. Commissioner of Banks, 254 Mass. 173, 149 N. E. 883—a claim on a check taken by the United States which was drawn on a state trust company which failed and was being liquidated under direction of the state court. The Dempsey bond and all proceedings on it were, essentially, parts of the liquidating receivership in the District Court. The whole thing ought to have been retained there. The order permitting suit in the state court, if it amounted to anything, was ill advised. The District Judge was right in recognizing that fact and revoking the order.