**UNITED STATES v. PARKER, Commissioner of Banking for State of Wisconsin (two cases).**

(District Court, W. D. Wisconsin. September 29, 1925.)

Nos. 68F, 69F.

Banks and banking ⬤⟾80(8)—United States entitled to priority of claims against property of "insolvent" banks taken over by state bank commissioner.

Where banks which state banking commissioner took possession of pursuant to St. Wis. 1925, § 220.08, were in fact "insolvent" in the sense of having insufficient property to pay debts, the commissioner of banking holds property of banks as a receiver, and all the elements of an act of bankruptcy under Bankruptcy Act, § 3a(4), being Comp. St. § 9587, are present, so that United States, under Rev. St. § 3466 (Comp. St. § 6372) is entitled to preferential payment of dishonored drafts purchased with post office funds.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Insolvency—Insolvent.]

In Equity. Two actions by the United States against Dwight T. Parker, Commissioner of Banking for the State of Wisconsin. Decree for plaintiff.

These are two suits brought by the United States against Dwight T. Parker, commissioner of banking for the state of Wisconsin, to require the defendant to pay to the United States in full the former's claims against the Bayfield County Bank of Washburn and the Northern State Bank, respectively, both of which banks were taken over by the defendant as commissioner of banking on December 5, 1923.

Stanley M. Ryan, Asst. U. S. Atty., of Janesville, Wis.

Walsh & Morris, of Washburn, Wis., for defendant.

LUSE, District Judge. These two suits were tried together upon stipulation of the parties, and as there are no material differences between them, they will be dealt with in a single opinion, with findings of fact necessary to cover both cases.

Prior to December 5, 1923, both the Bayfield County Bank and the Northern State Bank were duly organized under the laws of the state of Wisconsin and were transacting banking business as state banks at the city of Washburn, Bayfield county, Wis. On December 5, 1923, the banking commissioner of Wisconsin took possession of both of the banks pursuant to the provisions of section 220.08 of the Wisconsin Statutes, subsection 1 of which is as follows: "(1) Whenever it shall appear to the commissioner of banking that any bank or banking corporation to which this chapter is applicable has violated its charter or any law of the state, or is conducting its business in an unsafe or unauthorized manner, or if the capital of any such bank or banking corporation is impaired, or if any such bank or banking corporation shall refuse to submit its books, papers, and concerns to the inspection of any examiner, or if any officer thereof shall refuse to be examined upon oath touching

the concerns of any such bank or banking corporation, or if any such bank or banking corporation shall suspend payment of its obligations, or if from any examination or report provided for by this chapter the commissioner shall have reason to conclude that such bank or banking corporation is in an unsound or unsafe condition to transact the business for which it is organized, or that it is unsafe and inexpedient for it to continue business, or if any such bank or banking corporation shall neglect or refuse to observe an order of the commissioner, specified in section 220.07 of the statutes, the commissioner may forthwith take possession of the property and business of such bank or banking corporation, and retain such possession until such bank or banking corporation shall resume business, or its affairs be finally liquidated as herein provided."

On that date and at the close of business on December 4, 1923, neither bank had sufficient property taken at a fair valuation to pay all its debts.

On November 30, 1923, the Bayfield County Bank issued its draft on Northwestern National Bank of Minneapolis, Minn., payable to the postmaster of the city of Minneapolis as payee for the sum of $410, the draft number being 44,283, which draft was purchased by the postmaster at Washburn out of surplus money order funds for the purpose of remittance. The Northern State Bank issued its several drafts or bills of exchange as follows: No. 43,346, dated December 4, 1923, on the Second Ward Savings Bank of Milwaukee, Wis., payable to the postmaster of the city of Milwaukee, for $940, the draft being purchased with money by the postmaster at Washburn, Wis., out of funds belonging to the United States treasury savings certificate funds; a draft No. 43,347, dated December 4, 1923, amount $7.04, payable to the order of the postmaster of Milwaukee, Wis., and drawn against the Second Ward Savings Bank of the city of Milwaukee, which draft was purchased with funds belonging to the United States known as postal funds; a draft No. 43,348, issued December 4, 1923, amount $33.80, drawn upon the Second Ward Savings Bank of the city of Milwaukee in favor of the postmaster of the city of Milwaukee, which draft was purchased with funds belonging to the United States known as revenue funds; a draft No. 9103, dated December 4, 1923, drawn on the Midland National Bank of Minneapolis, Minn., payable to the postmaster at the city of Minneapolis, for the sum of $1,155, purchased by the postmaster at Washburn out of funds belonging to the United States known as surplus money funds.

All the drafts above enumerated were dishonored upon presentation, and complainant contends that the United States is entitled to have the same paid in full under the provisions of section 3466, R. S. (Comp. St. § 6372), while defendant claims that the complainant is entitled only to its pro rata share of the assets of the respective banks, and that section 3466 does not apply, and cites the case of United States v. State of Oklahoma, 261 U. S. 253, 43 S. Ct. 295, 67 L. Ed. 638, in support of its contention.

It is thought that the case last cited is to be distinguished from the instant cases in at least two important particulars: (1) In the Oklahoma Case the insolvency alleged in the complaint was common-law insolvency—inability to pay debts as the same fell due—while in the instant cases each of the banks was insolvent in the bankruptcy sense of having insufficient property, taken at fair value, to pay its debts. (2) The Oklahoma guaranty fund law, with its purpose of paying depositors in full, is stressed, in the opinion of the Supreme Court, as indicating that the taking possession of the Oklahoma bank by the bank commissioner is not as a receiver or trustee. The Wisconsin statute, on the other hand, has no guaranty fund provisions and contemplates the liquidation of banks by the pro rata payment of creditors in cases where the property of the banks is insufficient to pay out in full. Seizure of a bank by the commissioner for the purposes of the Wisconsin statute is very suggestive of the ordinary receivership or trusteeship. Be this as it may, the opinion in the Oklahoma Case discloses that the case is decided mainly on the two points that the insolvency alleged in the complaint in that suit was not insolvency in the bankruptcy sense nor in the sense employed in section 3466, R. S., and that, in view of the seizure of the bank upon the ground of common-law insolvency and the purposes of such seizure under the Oklahoma guaranty fund law, the seizure was not as a receiver or trustee. It must be conceded, however, that there is a similarity between the Oklahoma and Wisconsin statutes, in that both permit the bank commissioner to take over a bank for less cause than insolvency in the bankruptcy sense. However, as we have seen, the seizure in the instant cases was of banks which were in fact insolvent in that sense.

In view of these distinctions, it is not

considered that the Oklahoma Case can be deemed decisive of the present controversies.

Section 3466, R. S., upon which the complainant relies, is as follows: "Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority hereby established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

The last clause of the section above quoted, commencing with the words "and the priority hereby established," etc., is quite evidently an explanation of the term "insolvent," used in the first clause. It was so held in Conrad v. Atlantic Insurance Co., 1 Pet. 386, 439 (7 L. Ed. 189). In that case it was also said: "Insolvency then, in the sense of the statute, relates to such a general divestment of property, as would in fact be equivalent to insolvency in its technical sense. It supposes that all the debtor's property has passed from him." U. S. v. Hooe, 3 Cranch, 73, 2 L. Ed. 370.

In Prince v. Bartlett, 8 Cranch, 431, 3 L. Ed. 614, the Supreme Court, in speaking of this act, says: "Insolvency must be understood to mean a legal and known insolvency manifested by some notorious act of the debtor pursuant to law."

In the Oklahoma Case, supra, it is said: "Mere inability of the debtor to pay all his debts in ordinary course of business is not insolvency within the meaning of the act, but it must be manifested in one of the modes pointed out in the latter part of the statute which defines or explains the meaning of insolvency referred to in the earlier part. [Cases cited.] Where the debtor is divested of his property in one of the modes specified in the act, the person who becomes invested with the title is made trustee for the United States and bound first to pay its debt out of the debtor's property."

It is the claim of the government that when the bank commissioner took over these banks under the circumstances of insolvency already referred to, the situation came squarely within the last clause of section 3a(4) of the Bankruptcy Act (Comp. St. § 9587), defining acts of bankruptcy: "Or because of insolvency a receiver or trustee has been put in charge of his property under the laws of a state."

In Liquidation of Citizens' Savings & Trust Co., 171 Wis. 601, 177 N. W. 905, the Wisconsin court held that when the commissioner of banking takes possession of property and the business of a trust company under section 220.08, he becomes vested with the title and right of possession of such property and assets as liquidating agent for the benefit primarily of the trust company's creditors—"The title and interest held by the banking commissioner to the trust company's property and assets is vested in him by the statutes and he held it in trust for the trust company and its creditors. Such interest in the property held by the commissioner is akin to the title and interest vested in assignees or receivers who take and hold property of a debtor in legal proceedings for the benefit of creditors."

In Wisconsin Trust Co. v. Cousins, 172 Wis. 486, 498, 179 N. W. 801, 805, the Wisconsin court said: "We hold that the commissioner of banking acts under this statute as trustee for all the creditors."

Granting that under the authority of the Oklahoma Case a bank commissioner in possession of a bank's property for other and lesser statutory causes than insolvency in the bankruptcy sense is not a receiver or trustee, nevertheless, in the light of the Wisconsin decisions above quoted, I am unable to avoid the conclusion that the defendant in the instant cases holds the property of the banks in question as a receiver, and that he took charge of the properties because of insolvency of the banks in the bankruptcy sense, and that all the elements of an act of bankruptcy under section 3a(4) of the Bankruptcy Act are present. See U. S. Fidelity & Guaranty Co. v. Bramwell (D. C.) 295 F. 331.

Thus defendant has become vested with title to the property of the respective banks under acts which are defined as an act of bankruptcy in the Bankruptcy Act, and complainant may have a decree for the recovery in full of its claims: $410 in suit No. 68F, involving the Bayfield County Bank; and $2,135.84 in suit No. 69F, involving the Northern State Bank.