### BLISS v. UNITED STATES.
#### No. 8983.

Circuit Court of Appeals, Eighth Circuit.

Nov. 20, 1930.

Charles M. Skiles, of Lincoln, Neb. (Ira D. Beynon and John A. Skiles, both of Lincoln, Neb., on the brief), for appellant.

Ambrose C. Epperson, Asst. U. S. Atty., of Omaha, Neb. (Charles E. Sandall, U. S. Atty., of Omaha, Neb., Robert Van Pelt, Asst. U. S. Atty., of Lincoln, Neb., and George A. Keyser and Edson Smith, Asst. U. S. Attys., both of Omaha, Neb., on the brief), for the United States.

Before KENYON, BOOTH, and GARDNER, Circuit Judges.

GARDNER, Circuit Judge.

In this case, the United States brought suit against the appellant, as receiver of the Nebraska State Bank of Humboldt, Neb., to recover certain postal funds of the United States which had been deposited in said bank while it was a going concern, and asked decree adjudging its claim to be a prior one over other creditors, under section 3466 Revised Statutes, title 31, USCA § 191. The facts are not in dispute and appear in the record from the admitted allegations of the pleadings, supplemented by written stipulation of the parties.

The Nebraska State Bank of Humboldt, Neb., was, as its name indicates, a state bank. On the 26th of April, 1929, the department of trade and commerce of the state of Nebraska took charge of this bank and all its assets. On the same date, and at or prior to the time the bank was taken over by the department of trade and commerce, and apparently as a part of the same transaction, the directors of the bank signed the following written instrument, to wit:

"Humboldt, Nebraska, April 26, 1929.

"We the undersigned, Directors of the Nebraska State Bank, Humboldt, Nebraska, do hereby acknowledge receipt of the original notice, of which the above is an exact copy, as having been received this day from R. H. Larson, State Bank Examiner and Representative of the Department of Trade and Commerce of the State of Nebraska; and do also acknowledge that there exists among the assets of the Nebraska State Bank, Humboldt, Nebraska, sufficient losses on worthless and doubtful assets equal to more than the capital of said bank and that our reserve is below legal requirements, and that, although a reasonable time has been allowed by the Sec-

retary of the Department of Trade and Commerce of the State of Nebraska, in which to remove such losses and to restore the impairment of capital of said bank and in which to restore the reserve to legal requirements, up to and including this 26th day of April 1929, said losses, impairment of capital and deficiency in reserve still exist in said bank."

The notice referred to in this signed statement is as follows:

"Humboldt, Nebraska, April 26, 1929.
"To the Officers, Directors and Stockholders, of the Nebraska State Bank, Humboldt, Nebr.
"This is to notify you that I am this day taking charge of the properties, business and affairs of the Nebraska State Bank, Humboldt, Nebraska, acting for and under the instructions of the Secretary of the Department of Trade and Commerce, and of the State of Nebraska.

"[Signed] R. H. Larson,
"State Bank Examiner."

On the 15th of May, 1929, the secretary of the department of trade and commerce communicated to the Attorney General of Nebraska facts relative to the conduct of the business of the bank and its condition at and prior to April 26, 1929, among which was the insolvency of the bank, and requested appropriate action to place the bank in the hands of a receiver. On the 16th of May, 1929, the Attorney General, pursuant to the Nebraska statute, presented to the district court of Richardson county, Neb., a petition in which the state of Nebraska, on relation of the Attorney General, was plaintiff, and the Nebraska State Bank of Humboldt was defendant, asking the appointment of a receiver for the bank and alleging various grounds for such appointment, including insolvency. The petition was not answered by the defendant, so that its allegations stood confessed, and, on the 3d day of June, 1929, "the interested parties being present or represented," the cause was brought on for hearing and a receiver was appointed, the secretary of the department of trade and commerce being named as such receiver, pursuant to statutory provision.

When the bank was taken in charge by the department of trade and commerce on the 26th day of April, 1929, there was on deposit in the bank, in postal funds of the United States, the sum of $271.05 to the credit of the United States postmaster of Humboldt, and at the same time there was in transit from the Humboldt postmaster to the postoffice de-partment at Omaha, Neb., a draft issued by the Humboldt State Bank in the sum of $230, which had been purchased by the postmaster at Humboldt with United States postal funds.

It was alleged in the petition for appointment of a receiver, among other things, that the bank was and is insolvent and unable to meet its obligations, and that it was necessary that a receiver be appointed to take charge of, liquidate, and wind up the affairs of the bank. It was stipulated that the bank was actually insolvent, in that its assets were insufficient in value to pay its debts and liabilities, and that the liabilities of the bank probably exceeded the value of its assets not less than $32,128.81; that the receiver refused to pay the claim of the United States as a prior claim, but proposed to pro-rate and pay this claim with all other preferred claims of the bank, and refused to pay the claim in full, unless the assets of the bank were sufficient to pay all the preferred claims of the bank in full. It was also stipulated that neither the officers nor stockholders had intervened in the suit for the appointment of a receiver; that the receiver was proceeding to liquidate the assets of the bank. It was also stipulated "that neither the officers of said bank, nor the stockholders of said bank, nor both together, voluntarily turned over or surrendered to the proper official of the State of Nebraska, the property and business of such bank, but that the proper officers of the State of Nebraska, with reference to banking came to said bank, and took possession thereof, under and by virtue of the authority placed in them by the laws of the State of Nebraska."

The lower court found in favor of the government, and entered decree, adjudging the government's claim to be a prior one, under the provisions of section 3466, United States Revised Statutes. The receiver has appealed, and in this court contends: (1) That no act of bankruptcy had been committed, and no voluntary assignment had been made by the Nebraska State Bank of Humboldt until the appointment of the receiver on the 3d day of June, 1929; and (2) that, by virtue of the Nebraska statutes, the depositors of the bank acquired a prior lien on all the assets of the bank when the same were taken over by the department of trade and commerce, and hence the claim of the government must prorate with, and be paid on, the same basis as the claims of the other depositors. Section 3466, United States Revised Statutes, reads as follows:

"Whenever any person indebted to the

United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

Section 3467 (31 USCA § 192) provides:

"Every executor, administrator, or assignee, or other person, who pays any debt due by the person or estate from whom or for which he acts, before he satisfies and pays the debts due to the United States from such person or estate, shall become answerable in his own person and estate for the debts so due to the United States, or for so much thereof as may remain due and unpaid."

Section 3466 is to be liberally construed. Bramwell v. U. S. F. & G. Co., 269 U. S. 483, 46 S. Ct. 176, 70 L. Ed. 368; Price v. United States, 269 U. S. 492, 46 S. Ct. 180, 70 L. Ed. 373; United States v. Guaranty Trust Co. (C. C. A.) 33 F.(2d) 533; Beaston v. Farmers' Bank, 12 Pet. 102, 9 L. Ed. 1017.

It was admitted that the total value of the bank's assets was less than its debts, and that it was actually insolvent. Actual insolvency being admitted, it remains to determine whether, within the meaning of section 3466, the bank made a voluntary assignment of its property or committed an act of bankruptcy. We have set out a stipulation to the effect that neither the officers nor the stockholders of the bank had voluntarily turned over the bank to the proper officers of the state. This stipulation, we must assume, is supplemental to the statement signed by the directors of the bank, and it seems that the parties have not considered the directors as being officers of the bank. This is indicated by the fact that the notice referred to in the statement signed by the directors was addressed "To the Officers, Directors and Stockholders," and it is noted in passing that the stipulation mentions officers, but not directors, and it is assumed that the purpose of the stipulation was to show that the officers, as distinguished from directors, had done nothing toward turning over or surrendering the possession of the bank to the officials of the department of trade and commerce. Unless so construed, this stipulation constitutes merely a legal conclusion. The directors of the bank in the signed statement referred to set out and admit the existence of all facts and conditions necessary to place the bank in the hands of a receiver. Admitting the facts set out in this statement, receivership was inevitable; it was the duty of the officers taking charge of the bank to place it in process of liquidation. It appears from this statement that the condition of the bank had, prior to the time of signing the statement, been determined by the department of trade and commerce, and that, "although a reasonable time has been allowed by the Secretary of the Department of Trade and Commerce of the State of Nebraska in which to remove such losses and to restore the impairment of capital of said bank, and in which to restore the reserve to legal requirements, up to and including this 26th day of April, 1929, said losses, impairment of capital and deficiency in reserve still exists in said bank." This clearly indicates that the department of trade and commerce had completed its examination of the bank and had determined the condition and value of its assets. It was not then necessary that the department take over possession of the bank for the purpose of determining these facts, because they had already been determined, communicated to the directors, and not corrected. There therefore remained nothing further to be done except to place the bank in process of liquidation, and this act of the directors amounted to a voluntary assignment of its property, and an act of bankruptcy within the meaning of section 3466. Bramwell v. U. S. F. & G. Co., 269 U. S. 483, 46 S. Ct. 176, 178, 70 L. Ed. 368; Price v. United States, 269 U. S. 492, 46 S. Ct. 180, 182, 70 L. Ed. 373; United States v. Butterworth-Judson Corp., 269 U. S. 504, 46 S. Ct. 179, 180, 70 L. Ed. 380; Mothersead v. U. S. F. & G. Co. (C. C. A.) 22 F.(2d) 644, 653; Adams v. United States (C. C. A.) 24 F.(2d) 907; United States v. Parker (D. C.) 9 F.(2d) 473; United States v. People's Trust Co. (D. C.) 17 F.(2d) 437; United States ex rel. v. Porter (D. C.) 24 F.(2d) 709; United States ex rel. v. Porter (D. C.) 24 F.(2d) 139; State ex rel. v. Kilgore State Bank, 112 Neb. 856, 201 N. W. 901.

In Bramwell v. United States Fidelity & Guaranty Co., supra, in which the opinion was written by Mr. Justice Butler, in discussing the effect of a resolution passed by the bank's directors, it is said:

"The resolution authorized and was followed by the handing over of the possession and control of all the bank's property to be converted into money to pay the bank's

debts. The act of the directors made the bank's insolvency notorious. The established rule of liberal construction requires that the priority act be applied having regard to the public good it was intended to advance. Its application is not to be narrowly restricted to the cases within the literal and technical meaning of the words used. The things done in this case are not different in their substance from the things specified as the ways in which insolvency is required to be made manifest. It must be held that within the meaning of the priority act, the bank made a voluntary assignment of its property; and that, because of the bank's insolvency, a trustee was put in charge of its property under a state law within the meaning of the Bankruptcy Act [11 USCA]."

In Price v. United States, supra, in which Mr. Justice Butler again wrote the opinion, it is said:

"By answering and joining in the prayer of the complaint, defendant co-operated with the plaintiff to secure the appointment of a receiver to whom it immediately handed over possession and control of all its property and business."

The court held that, while the complaint alleged that the defendant was solvent, yet the facts set forth indicated that it was in failing condition, and it was found to be insolvent within a short time after the appointment of a receiver; that this acquiescence and co-operation on behalf of the insolvent constituted a voluntary assignment and an act of bankruptcy.

Again in United States v. Butterworth Corp., supra, the Supreme Court considered acts which it held to amount to a voluntary assignment. It is there said:

"Taken in connection with its insolvency, now conceded, respondent's answer admitting the allegations of the complaint and its consent to the decree appointing receivers amounted to the handing over of all its property and business to the receivers to be administered, under the direction of the court, as a trust fund to pay respondent's debts. In substance, the things done by respondent amounted to a voluntary assignment of all its property within the meaning of section 3466."

In the instant case, the admissions contained in the statement signed by the directors, taken in connection with the fact of actual insolvency, would seem clearly, under the doctrine announced in this case, to amount to a voluntary assignment of all the bank's property, within the meaning of section 3466.

This court, in Mothersead v. United States Fidelity & Guaranty Co., supra, discussed informal acts of the board of directors which were held to be tantamount to a voluntary assignment. It is there said:

"Counsel for the bank commissioner undertake to distinguish the instant case from the Bramwell Case because in the Bramwell Case there was formal action by a written resolution of the board of directors of the insolvent bank, whereas, here the directors of the insolvent banks in class 4 acted informally. This contention is without merit. No action of the boards of directors was necessary. The banks were insolvent. Section 4128 of the Compiled Oklahoma Statutes 1921 provides that no bank shall accept or receive deposits when such bank is insolvent, and that any officer, director, cashier or manager of any bank who shall knowingly violate the provisions of such section shall be guilty of a felony and upon conviction shall be punished as therein provided. Section 4133 quoted above provides how an insolvent bank may place its affairs and assets under the control of the bank commissioner. These statutes conferred the necessary authority and clearly required the officers of such banks on the event of their insolvency to cease accepting deposits, to close their doors and to place their assets and affairs in the hands of the bank commissioner. The officers only followed the clear and positive mandate of the statute."

Provisions similar to those referred to in the above quotation are found in the statutes of Nebraska.

In United States ex rel. v. Porter (D. C.) 24 F.(2d) 709, Judge Dietrich, in referring to the decisions on this question, said:

"They [the decisions] seem to establish the principle that it is not essential to constitute an act of bankruptcy that the estate of an insolvent bank be formally assigned to the state officer who is authorized by law to liquidate insolvent banking institutions. From them all I gather that if, either with affirmative formal action upon the part of the governing body of the insolvent institution, or with the acquiescence of the board of directors and stockholders, the estate is taken possession of and administered by the state officer, that fact is sufficient to bring the case within the intent and meaning of section 3466."

In the instant case, the fact that the bank was actually insolvent when the directors signed the statement referred to, and when

the department of trade and commerce took it over, must not be lost sight of.

Chapter 30 of the Nebraska Session Laws for 1925 was in effect at the time the department of trade and commerce took over this bank. The first section of that chapter provides that, when it shall appear from an examination or report of a bank examiner that the capital of any bank is impaired, that the corporation is conducting its business in an unsafe or unauthorized manner, or is endangering the interests of its depositors, or if, from an examination, the department shall have reason to conclude that the bank is unsafe or unsound, the department may take possession of the property and place it in charge of the guaranty fund commission. Section 5 of the chapter provides that:

"If at any time after the Guarantee Fund Commission shall have so taken possession of the property and business of any bank, the Guarantee Fund Commission shall determine that it is impossible to preserve such institution as a going concern, then the Guarantee Fund Commission shall communicate the facts to the Attorney General, who shall thereupon cause an application to be made to the district court of the county where such corporation maintained its bank, or to a judge of such court anywhere within his judicial district, for an order directing the Guarantee Fund Commission to take charge of the business, assets and property of every kind of said corporation, and to wind up its affairs."

The statements made by the directors of this bank, viewed in the light of these provisions of the Nebraska law, make it clear that the condition of the bank had been thoroughly investigated and determined before the bank was taken over, and that there remained nothing further to be done, except that through the guaranty fund commission receivership proceedings be instituted.

The entire contention of appellant is bottomed on the proposition that the taking over of the bank by the department of trade and commerce on the 26th of April, 1929, and the acts of the directors of the bank, did not constitute an act of bankruptcy or a voluntary assignment. It is conceded by appellant that the appointment of the receiver constituted an act of bankruptcy, but it is argued that the rights of depositors accrued upon the taking over of the bank by the department of trade and commerce. Confessedly, if the taking over of the bank on the 26th of April, 1929, and the acts of the directors in connection therewith, constituted a voluntary assign-

ment or an act of bankruptcy, then the Nebraska statute providing for a first lien on the assets of the bank in favor of depositors never became effective, and need be given no further consideration. The conclusion seems inescapable that the directors turned over to the department of trade and commerce this insolvent bank for purpose of liquidation, and their act in so doing amounted to a voluntary assignment. We are therefore of the view that, immediately upon the taking over of the bank, it being then insolvent, the right of priority accrued. In view of our conclusion, we pretermit as unnecessary any discussion of the other questions presented.

The judgment of the lower court is sustained.