### In re SECURITY SAVINGS & LOAN ASS'N.
### No. 451.

District Court, D. Nevada.
Feb. 15, 1932.

See, also, 52 F.(2d) 961.

Samuel R. Tippett, of Reno, Nev., and C. R. Ellery, of Cheyenne, Wyo., for petitioners.

Painter & Withers, of Reno, Nev., and G. Dexter Blount, Harry S. Silverstein, and David Rosner, all of Denver, Colo., for joining petitioners.

Wm. McKnight and Harwood & Diskin, all of Reno, Nev., for respondents.

NORCROSS, District Judge.

This is a proceeding upon the part of certain creditors for an adjudication in involuntary bankruptcy. The alleged act of bankruptcy charged in the petition is the appointment by a state court of a receiver on the 16th day of September, 1931, and that at the time of such appointment the corporation was insolvent.

The salient facts disclose that on March 7, 1931, E. J. Seaborn, as state bank examiner, took charge of the Security Savings & Loan Association, a Nevada corporation doing business in several states, and as such officer continued in charge of the association until upon his petition or complaint filed in the state court he was appointed receiver. At the time the state bank examiner took charge of the association, and at all times subsequent, it was bankrupt within the definition of the Bankruptcy Act (section 1 [11 USCA § 1]).

Being bankrupt at the time the bank examiner took charge, such taking charge was an act of bankruptcy, irrespective of the reasons which immediately occasioned such taking charge. In re Deauville, Inc. (D. C.) 52 F.(2d) 963; In re Guaranty Bldg. & Loan Ass'n (D. C.) 49 F.(2d) 776; Bliss v. United States (C. C. A.) 44 F.(2d) 909; Adams v. United States (C. C. A.) 24 F.(2d) 907, 908; Mothersead v. United States F. & G. Co. (C. C. A.) 22 F.(2d) 644; United States v. Parker (D. C.) 9 F.(2d) 473.

As to that act of bankruptcy committed by the taking over of the corporation by the

bank examiner, the four months' limitation had expired before this proceeding was instituted. It is contended, however, that the appointment of a receiver by the state court was a second act of bankruptcy requiring adjudication on that account. It is conceded that this contention. presents a new question upon which there is no decision thus far rendered directly in point.

The statute under which the bank examiner exercised authority gave him complete possession and control of the property and business of the corporation "until the affairs of such organization shall have been fully remedied or finally liquidated or until a receiver shall have been appointed by any court of competent jurisdiction holden in this state." Stats. Nev. 1931, c. 51, p. 71, § 23. The statute further provides:

"Sec. 28. At any time after such lawful taking of possession of the business and assets of any such domestic association, company or corporation by the said bank examiner, he may, as temporary representative of all creditors and stockholders, * * * apply to a district court of the judicial district in which the principal office in this state of such association, company or corporation is located for a writ of injunction and the appointment of a receiver or receivers."

"Sec. 29. Said district court, at the time of ordering such injunction, or at any time thereafter, may appoint a receiver or receivers for the creditors and stockholders, and in the appointment and naming thereof, in the absence of good cause to the contrary, said court shall give preferential consideration to the state bank examiner. * * * "

The powers authorized to be exercised by the state bank examiner were not less than those of a temporary receiver.

In the case of Adams v. United States, supra, the Circuit Court of Appeals of this circuit said: "We are unable to agree that possession by a supervisor of banking under the laws of Washington is not possession of a receiver or trustee. When the supervisor takes possession under the law, his possession and control divests the possession and control of the bank officers over the assets of the bank, and under authority of law he proceeds to liquidate and wind up the affairs of the corporation, and distribute its assets to those entitled."

See, also, Bramwell v. U. S. Fidelity & G. Co., 269 U. S. 483, 491, 46 S. Ct. 176, 70 L. Ed. 368, affirming (C. C. A.) 299 F. 705; United States v. Parker, supra; United States v. First State Bank (D. C.) 14 F.(2d) 543; United States v. People's Trust Co. (I) C.) 17 F.(2d) 437, 442; Mothersead v. U. S Fidelity & G. Co., supra.

The case of In re Luxor Cab Mfg. Corp. (C. C. A.) 25 F.(2d) 644, 645, presented the question whether the appointment of permanent receivers by the court on December 3, 1926, following their appointment as temporary receivers on June 29, 1926, constituted an act of bankruptcy so that a petition for adjudication of bankruptcy filed within four months of the latter date was within time. The Circuit Court of Appeals of the Second Circuit in that case sustained the order of the District Court that the filing of the petition was too late, because the act of bankruptcy occurred on the date of the appointment of temporary receivers. The court said: "While the decree of June 29 presupposed some subsequent action, it was not the reappointment of the receivers but to find out whether they should be relieved of duties already imposed upon them. If the creditors could not show any ground for ending their custody, it was to continue; there was to be no interregnum during which the defendant would resume possession, no new appointment, no second assumption of custody by the court. This appears to us by far the more natural way to look at what happened, and, so far as diction should count, the proper meaning of the phrase 'continued' and 'made permanent,' used in the decree of August 3."

The reasoning applied in the Luxor Cab Case is applicable to the case at bar. The only distinction in the two cases is the fact that in the Luxor Cab Case the court made the appointment of the temporary receivers as well as that of the permanent receivers. In the case at bar the receiver ultimately so appointed by the court first took charge of the business and property of the bankrupt as state bank examiner and was in effect a receiver by operation of law and not by decree of court. As such examiner he was, however, entitled to preferential consideration for appointment as court receiver, and the proceeding for such appointment was authorized, if not required, by the provisions of the statute. There could be "no interregnum during which the defendant would resume possession."

There was no second assumption of possession by the receiver appointed by the court. There was a change merely in the immediate source of his authority. While he no longer acted as a trustee or receiver by virtue of his office under the provisions of the statute, the same statute authorized the procedure by which he was entitled to become receiver by court appointment. As bank examiner his

dominion over the business and property of the bankrupt was not less than that of a temporary receiver, but, upon the contrary, was more extensive than that ordinarily possessed by such court officer.

The language of the statute (Bankr. Act § 3a (5), as amended May 27, 1926, § 3, 11 USCA § 21 (a) (5), is: "While insolvent, a receiver or a trustee has been appointed, or put in charge of his property." There is nothing in this expression indicative of a meaning that, after a receiver or trustee has once been appointed or put in charge of the insolvent's property, any later change in the character of such receivership or trusteeship is a further or additional act of bankruptcy.

An act of bankruptcy having been committed when the bank examiner took possession and charge of the business and assets of the bankrupt corporation, the further procedure under the statute upon the part of the bank examiner by virtue of which he was appointed a court receiver does not constitute a new act of bankruptcy relieving creditors from the four months' limitation dating from the act of taking charge as bank examiner.

The petition is dismissed.