## CLARK et al. v. MUTUAL LOAN & INVESTMENT CO.

### No. 10740.

Circuit Court of Appeals, Eighth Circuit.

Feb. 17, 1937.

Rehearing Denied March 13, 1937.

J. A. Tellier, of Little Rock, Ark., for appellants.

Verne McMillen, of Little Rock, Ark., for appellee.

Before SANBORN, WOODROUGH, and BOOTH, Circuit Judges.

BOOTH, Circuit Judge.

This is an appeal from a decree denying an adjudication in bankruptcy and dismissing the petition.

Petitioners, appellants herein, creditors of the Mutual Loan & Investment Company, filed a petition on May 8, 1936, in the United States District Court for the Eastern District of Arkansas seeking to have the Company adjudicated a bankrupt.

The petitioners alleged in their petition that the Loan Company, while insolvent and within four months preceding the date of the filing of the petition, namely, on January 10, 1936, committed an act of bankruptcy, to wit, "was placed in the hands of a Receiver by the Pulaski Chancery Court on January 10, 1936, on the ground of insolvency."

The Loan Company, its officers, its receiver, and certain of its creditors, filed an

answer, admitting that the Pulaski chancery court did appoint a receiver on January 10, 1936, while the Loan Company was insolvent, but denying that the appointment of said receiver constituted an act of bankruptcy.

The answer further set forth that on December 23, 1935, the board of directors passed a resolution consenting that the Loan Company be liquidated under the provisions of section 8 of Act 109, p. 307, of the Acts of the General Assembly of Arkansas, 1931; that the state bank commissioner took possession of its office, property, and all its assets on said date; that the bank commissioner made an inventory of its assets as of December 21, 1935, and filed the same in the Pulaski chancery court on December 31, 1935, and had the case there docketed, as provided by said Act 109, p. 300.

The answer further set forth that the bank commissioner filed a petition in the Pulaski chancery court on January 8, 1936, in which he alleged that the Loan Company was insolvent and prayed that the Pulaski chancery court appoint a receiver; that the Pulaski chancery court did appoint T. H. Humphreys, Jr., as receiver on January 10, 1936.

It was further set forth in said answer that the bank commissioner had exclusive possession and control of the assets of the Loan Company at all times after he took charge thereof on December 23, 1935, up to the date the receiver was appointed and took charge of said assets on January 10, 1936; that the directors and stockholders of appellee were excluded from possession or control of the corporation's assets from and after December 23, 1935, to January 10, 1936; that the Loan Company, respondent, had no chance to commit an act of bankruptcy within that period; that the act of bankruptcy was committed on December 23, 1935, on which date the company was insolvent, which act was committed more than four months before the petition was filed on May 8, 1936.

The case came on for hearing in the trial court, and evidence was introduced by both the petitioning creditors and by the respondents. The petitioning creditors requested the court to make certain declarations of law, which request was overruled.

The trial court then made findings of fact and conclusions of law in which he sustained the theory of respondents, and refused to adjudicate the Loan Company a bankrupt; and dismissed the petition. The findings are set out in the margin.[1]

Petitioners excepted to the findings of fact and declarations of law as made, and

---

[1] "In the matter of Mutual Loan & Investment Company,

"Bankruptcy No. 4469.

"Now on this day this cause comes on for hearing, and come the petitioning creditors, W. B. Clark, and others, by J. A. Tellier and George Watson, their attorneys, and come the respondents Mutual Loan & Investment Company, and others, by Verne McMillen, their attorney, and this cause is submitted to the court upon the petition, the response and the testimony of witnesses taken ore tenus at the bar of the court.

"And the court being well and sufficiently advised in the premises doth find the facts to be as follows:

"(1) The Mutual Loan & Investment Company is a monied, business or commercial corporation organized under and pursuant to the laws of the State of Arkansas.

"(2) The Mutual Loan & Investment Company is not a municipal, railroad, insurance or banking corporation.

"(3) The Mutual Loan & Investment Company is principally engaged in the loan and investment business.

"(4) The Mutual Loan & Investment Company has for the greater portion of the six months next preceding the date of the filing of the petition in this case had its principal place of business in the city of Little Rock, Arkansas, within the Eastern District thereof.

"(5) The Mutual Loan & Investment Company owes debts to the amount of one thousand dollars and upwards, and is insolvent.

"(6) The Mutual Loan & Investment Company is neither a wage earner nor a person engaged principally in farming or the tillage of the soil.

"(7) W. B. Clark and the other petitioners are creditors of said Mutual Loan & Investment Company, having provable claims against it amounting in the aggregate in excess of securities held by them to the sum of five hundred dollars.

"(8) No one of the petitioning creditors is entitled to priority of payment of his said claim within the meaning of Section 64b of the United States Bankruptcy Act and amendment thereof [11 U.S.C.A. § 104(b)].

"(9) No one of the petitioning creditors received a preference within the meaning of Section 64 (b)—(a) of said law as amended [11 U.S.C.A. § 104(b)—(a)].

"(10) The petitioning creditors are qualified by reason of the nature and aggregate

have brought this appeal from the decree entered.

From the evidence introduced, it appears, without substantial contradiction, that on December 23, 1935, six directors of the Loan Company met pursuant to telephone call, without written notice as provided in the by-laws, and passed a resolution consenting to be liquidated by the bank commissioner, over the objection of two of the directors who were present, and without the presence or consent of the seventh director. The minutes of that meeting stated that "the President explained to the Board that since there had been so much talk and it seemed that the Directors could not get together on anything that our best course was to turn the affairs of the Company over to the State Banking Department." No admission of insolvency was made at that time.

Appellants here contend that the directors' meeting was not valid, and that the possession by the bank commissioner of the company was an unlawful possession or trespass. Therefore, that such possession was not an act of bankruptcy.

The Arkansas act under which the bank commissioner purported to take possession of the Loan Company (Acts of Arkansas, 1931) reads as follows:

"Act 109.

"An Act to Amend Act 354 of the Acts of 1927 to Prevent Fraud in the Sale of Securities and for Other Purposes. * * *

"Section 8. Whenever the Commission shall ascertain by examination or otherwise that the assets of any investment company, which has received authority to sell securities in Arkansas under Act 354 of the Acts of 1927, shall have become impaired to such extent as to endanger or jeopardize the safety of the investments therein or that any such investment company is conducting its business in a fraudulent, illegal or unsafe

amount of their claims against the Mutual Loan & Investment Company.

"(11) On January 10, 1936, the Pulaski Chancery Court appointed T. H. Humphreys, Jr., receiver of the Mutual Loan & Investment Company, a corporation, while it was insolvent.

"(12) On May 8, 1936, W. B. Clark and others filed an involuntary petition in the United States District Court for the Eastern District of Arkansas, Western Division, sitting in bankruptcy, against the Mutual Loan & Investment Company, a corporation organized under the laws of Arkansas, praying that such corporation be adjudged an involuntary bankrupt.

"(13) The petition so filed as set out in paragraph (12) above was within four months of the date of the appointment of a receiver by the Pulaski Chancery Court, while said Mutual Loan & Investment Company was insolvent.

"(14) The Mutual Loan & Investment Company was insolvent on December 23, 1935, on which said date the Bank Commissioner of the State of Arkansas took possession of the property and assets of said company under and pursuant to a resolution of its board of directors and under Section Eight of Act 109 of the Acts of the General Assembly of the State of Arkansas for 1931, approved March 9, 1931, and continued in possession of the business and assets of said company until the appointment of T. H. Humphreys, Jr., as Receiver on January 10, 1936.

"(15) There was no interregnum during which the Mutual Loan & Investment Company resumed possession of its business and assets after the Bank Commis-

sioner took charge and until the receiver was appointed by the Chancery Court of Pulaski County.

"(16) T. H. Humphreys, Jr., as Receiver of Mutual Loan and Investment Company has properly administered the affairs of said company and it will be to the best interest of the creditors of said company to permit the receiver to finish said work under the supervision of the Chancery Court of Pulaski County.

The Court declares the law to be:

"(1) The action of the Bank Commissioner of the State of Arkansas in taking over the business and assets of the Mutual Loan and Investment Company while insolvent on December 23, 1935, under and pursuant to a resolution of the Board of Directors and under Section Eight of Act 109 of the Acts of Arkansas for 1931, constituted an act of bankruptcy.

"(2) The appointment of T. H. Humphreys, Jr., as receiver for Mutual Loan & Investment Company by the Chancery Court of Pulaski County, Arkansas, on January 10, 1936, did not constitute a new act of bankruptcy, therefore the petition of W. B. Clark, and others was not filed within four months after an act of bankruptcy was committed by the Mutual Loan & Investment Company.

"(3) The bankruptcy court may in the exercise of discretion permit the state court to finish its work under a receivership.

"It is therefore considered, ordered, and adjudged that the petition of W. B. Clark and others, be and the same is hereby dismissed.

"John E. Martineau, Judge."

manner, which will or may endanger or jeopardize the safety of investments therein, the Commission may in any such event immediately take possession of the property and assets of such investment company and said Commission shall make or have made an inventory of the assets in duplicate of said investment company, one of which shall be filed in the office of the Commission and the other in the office of the Clerk of the Chancery Court of the County in which said institution was domiciled and the Clerk of said Court shall give such case a number on the Chancery Court Docket. The officers, directors and stockholders may have sixty days from the date when the Commission takes charge of said property to make good any deficit which may exist and at the expiration of said time if said deficits have not been made good, said Commission may proceed to appoint a liquidating agent by and with the consent of the Chancellor having jurisdiction in said cause, and proceed to liquidate the assets of said company in the same manner as is now provided by law for liquidation of a corporation in receivership."

Appellants contend that insolvency is not a condition precedent which will authorize a commissioner to take possession of the assets of an investment company; that possession by the bank commissioner under said statute must be coupled with insolvency to constitute an act of bankruptcy.

Appellants further contend that the appointment of a receiver for the Loan Company by the Pulaski chancery court on January 10, 1936, was a separate and independent act of bankruptcy as of said date; that under the provisions of the act, above quoted, the bank commissioner should hold the affairs of an investment company in statu quo for a period of 60 days before he attempts to liquidate them, in order that the directors and stockholders of the corporation may rehabilitate it if they see fit and are able; that in the case at bar the bank commissioner after 20 days abandoned his prerogatives under this statute and elected to follow a different course of procedure under a different act (governing the appointment of receivers for dissolved corporations; section 44 of Act 255, page 843, of the Acts of Arkansas of 1931); that the commissioner did not appoint a liquidating agent to succeed himself, but filed an initial pleading and instituted an independent suit in the chancery court when he asked for the appointment of a receiver; that the appointment of a receiver by the chancellor was an independent action; that, when the bank commissioner ceased to act under the statute which gave him a right to act (section 8 of Act 109) and invoked the jurisdiction of the chancery court for the appointment of a court receiver, he abandoned the liquidation under Act 109, and the appointment of a court receiver became an act of bankruptcy from which the period of four months began to run.

It appears, however, that when the bank commissioner filed the inventory as of December 21, 1935, with the clerk of the chancery court of Pulaski county in the state court, it was given a number, 53029, in that court and entitled, "Mutual Loan & Investment Company, in Liquidation." The case was given the same title and number when the receiver was appointed by the same court on January 10, 1936.

There was no interregnum between the possession of the bank commissioner and the possession of the receiver.

The main question presented to this court is whether finding 14 of the findings of fact of the trial court is supported by substantial evidence.

The finding may be subdivided into several parts, among them: First, whether the company in question was insolvent on December 23, 1935; second, whether the taking possession on that date by the bank commissioner under the statutes of Arkansas was valid; third, whether the possession taken continued until the appointment of T. H. Humphreys, Jr., as receiver on January 10, 1936.

As to the first, it is to be noted: (1) That the bank commissioner in his petition to the court under date of January 8, 1936, alleges insolvency and refers to an inventory of the company made by the bank commissioner as of December 21, 1935, which inventory was on file with the clerk of the court. (2) That there was testimony introduced at the hearing to the same effect. (3) There was an adjudication of insolvency in the Pulaski chancery court on January 10, 1936, when the receiver was appointed. No business was transacted between the taking possession on December 23, 1935, and the appointment of the receiver on January 10, 1936. (4) That the trial court has found insolvency on December 23, 1935, in finding 14. (5) That there is no substantial evidence to the contrary.

[1] Where a trial is had to the court, its finding of fact will be taken as true if there is any substantial evidence in its support.

In the case of Kline v. H. Poleskin & Son (C.C.A.) 46 F.(2d) 998, 999, the court concisely states the rule as follows: "It is not necessary to cite authorities to the effect that findings of a trial judge, who has had the witnesses before him, will not be disturbed, where there is substantial evidence to sustain such findings. The rule as laid down by this court in Wingert v. President, etc., of Hagerstown Bank, 41 F.(2d) 660, 663, is that such findings will not be disturbed, 'unless it plainly and unmistakably appears that they are wrong.' As stated by the Supreme Court, the rule is that such a finding is unassailable if there is 'any testimony consistent with the finding.' Adamson v. Gilliland, 242 U.S. 350, 37 S.Ct. 169, 170, 61 L.Ed. 356."

In Chicago Motor Vehicle Co. v. American Oak Leather Co. (C.C.A.) 141 F. 518, the question arose whether the findings of insolvency were established by the evidence. The court said (page 520):

"The issues were sent to the referee, as special master, 'to hear, take proofs, and report his conclusions,' on the application and consent of all parties. Thus the appellant waived its right to a jury trial, and chose submission of the controversy to the master, not as the mere recorder of the testimony, but as the tribunal of first instance to determine the ultimate facts. In such case the findings 'are to be taken as presumptively correct,' and are reviewable only 'when there has been manifest error in the consideration given to the evidence or in the application of the law.' * * * The rule so stated is plainly applicable for just consideration of the mass of conflicting testimony introduced upon this hearing to ascertain the value of the assets, on which the question of insolvency hinges. As the referee heard the witnesses, his judgment of the relative value and credibility of their testimony is entitled to affirmance under these conditions, unless it appears that it rests upon an erroneous theory of valuation, or controlling testimony was disregarded in his conclusions. The report of the referee contains a review of the testimony, and is convincing that there was no departure from the rule of fair valuation of assets, as defined under the bankruptcy act; that the findings are well supported by competent evidence; and that the valuations submitted on behalf of the appellant were generally excessive—grossly so in respect of patents and manufacturing plant in any view. This consideration of the findings is strengthened by their confirmation upon review and full hearing in the District Court. So, were it not for the contentions in argument and briefs on behalf of the appellant that both testimony and findings are erroneously and manifestly predicated upon 'wrecker's prices' and 'scrap values,' and not upon fair valuations as a going concern, the general rule above cited would authorize affirmance of the report and order, without reviewing the testimony on valuations; and it may well be remarked that the briefs do not clearly point out the errors complained of.

"On examination, however, of the testimony referred to, it satisfactorily appears that the evidence supports the finding of fair valuation of the aggregate of the appellant's property, and that the complaints so earnestly pressed are not well founded."

In the case of In re Doyle (D.C.) 199 F. 247, at page 255, the court said: "I am therefore constrained to hold that the findings of fact by the special master upon conflicting testimony, uninfluenced by any mistaken conclusions of law, should not be disturbed, even though this court but for such findings might have reached a different conclusion. Such is the rule enunciated in Re Harr (D.C.) 143 F. 421, 16 A.B.R. 213, and in numerous other cases."

In the case of In re Rome Planing-Mill Co. (D.C.) 99 F. 937, it was held that, where a petition in involuntary bankruptcy is referred to a referee in bankruptcy to find and report on the question whether respondent was solvent or insolvent at the date of the alleged act of bankruptcy, his conclusion, based on the examination of witnesses as to the extent of the respondent's liabilities and the value of his property, will not be set aside by the court on review, unless plainly contrary to the evidence.

■■ As to the second point touching the validity of the taking possession by the bank commissioner, it is contended that the meeting of the board of directors which gave consent to the liquidation of the company was not called with all the requirements stated in the by-laws.

The answer to this contention is: (1) That no consent by the board of directors was necessary to the taking possession by the bank commissioner; (2) that there was a waiver of the requirements for calling the meeting, by the taking part in the business

of the meeting without protest by those present, who constituted a majority of the directors.

As to the third point, that the bank commissioner had abandoned his right to possession under section 8 of Act 109 of the Statutes of Arkansas for 1931, there is no evidence of such intention on the part of the bank commissioner. It is true that he did not wait 60 days for the company to make good any deficit, but this was unnecessary, in view of the action of the board of directors already referred to.

The bank commissioner obtained the consent of the Pulaski chancery court to a liquidation, in the form of an order by that court appointing a receiver for the company, and the bank commissioner then turned over the company and its assets to the receiver so appointed.

The next question to be answered is, What was the effect of the taking possession of the assets and affairs of the company by the bank commissioner on December 23, 1935, in view of the surrounding circumstances?

We shall here assume that insolvency of the company existed on that date as we have heretofore attempted to show. What, then, was the effect of the taking possession by the bank commissioner?

Bramwell v. U. S. Fidelity Co., 269 U.S. 483, 46 S.Ct. 176, 70 L.Ed. 368, was a case involving primarily Rev.St. § 3466 (31 U.S. C.A. § 191), but also involved the meaning of "an act of bankruptcy." In its opinion the court said (269 U.S. 483, at page 490, 46 S.Ct. 176, 178, 70 L.Ed. 368):

"The statutes of the state (sections 6221–6223) provide for the handing over of the property of insolvent banks to the state superintendent of banks to be by him administered and disposed of for the benefit of creditors. By the resolution of the directors in this case, the bank was wholly divested of the possession and control of its property and business; and the exclusive possession and control of them passed to appellant for the purpose of liquidating the debts of the bank. * * *

"The effect of the resolution of the bank directors is the same as if it expressly granted and imposed upon appellant all the powers and duties in respect of the bank's property and the liquidation of its debts that are specified in the state law. The resolution authorized and was followed by the handing over of the possession and control of all the bank's property to be converted into money to pay the bank's debts. The act of the directors made the bank's insolvency notorious. * * * It must be held that * * * because of the bank's insolvency, a trustee was put in charge of its property under a state law within the meaning of the Bankruptcy Act."

See Mothersead v. United States Fidelity & Guaranty Co., 22 F.(2d) 644 (C.C.A. 8); In re Security Savings & Loan Ass'n (D.C.) 58 F.(2d) 644; United States v. Parker (D.C.) 9 F.(2d) 473; United States v. Adams (D.C.) 9 F.(2d) 624.

It is suggested that the insolvency on December 23, 1935, may have been insolvency under state statutes and not insolvency under the Bankruptcy Act (11 U. S.C.A. § 1 et seq.); but finding 14 of the trial court was made in a bankruptcy proceeding, and it is to be presumed that the term "insolvent" was used with the meaning given to it under the Bankruptcy Act.

In view of the authorities above cited, we reach the conclusion that the taking possession by the bank commissioner on December 23, 1935, of the property and business of the Mutual Loan & Investment Company was, by reason of the insolvency of the company on that date, an act of bankruptcy on the part of the company, and that, therefore, the filing of the petition on May 8, 1936, by the appellants was not within the time prescribed by the Bankruptcy Act, and, therefore, that the petition was rightfully dismissed.

We have considered the other questions raised by the parties to this appeal, but think that they do not require further discussion.

The decree is accordingly affirmed.